R.W. DOCKS & SLIPS, Petitioner-Respondent,

v.

DEPARTMENT OF NATURAL RESOURCES, Appellant.†

Court of Appeals

*No. 87–2079. Submitted on briefs April 22, 1988.—Decided July 21, 1988.*

(Also reported in 429 N.W.2d 86.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Robert A. Selk,* assistant attorney general, of Madison.

For the petitioner-respondent the cause was submitted on the brief of *Bruce A. Rasmussen* and *Bruce A. Rasmussen & Associates, Ltd.* of Minneapolis, Minnesota.

Before Dykman, Eich and Sundby, JJ.

EICH, J.   R.W. Docks & Slips, a marine developer, sought permission from the Department of Natural Resources (DNR) to dredge materials from the bed of Lake Superior under sec. 30.20, Stats., which authorizes the department to enter into contracts with private individuals for the removal of materials from lakebeds. After an investigation, but without a hearing, the department denied the permit and Docks sought judicial review. The trial court concluded that it could not conduct a "meaningful review" of the department's decision in the absence of an evidentiary record, and, without reaching the merits of the case, remanded to the department with directions to hold a hearing under sec. 30.19, Stats., which makes it unlawful to dredge certain waterways without a permit. The order also directed DNR to consider Docks' sec. 30.20 application and to take evidence on Docks' claim that the department should be estopped from allowing the dredging because of its past actions.

The issue is whether, on this record, the trial court had the authority under sec. 227.57(7), Stats., to remand to the department and order the hearing. We conclude that the permit proceedings provided by sec. 30.19, Stats., are inapplicable to Docks' project. However, we are satisfied that the trial court possessed the

authority under sec. 227.57(7) to remand the matter to the department for a hearing. We therefore affirm in part and reverse in part.

The basic facts are not in dispute. In February, 1983, Docks applied to DNR for authority to dredge approximately 20,000 cubic yards of material from the bed of Lake Superior in order to add ninety-five deepwater slips to its Port Superior Marina in Bayfield County. The application was filed pursuant to sec. 30.20(2), Stats., which authorizes DNR to enter into contracts for the removal of materials from the beds of navigable lakes "whenever consistent with public rights." Docks did not request a hearing on the application and DNR did not schedule hearings on its own. Instead, the department began an environmental assessment process. Public comment was solicited and received and DNR employees undertook an environmental evaluation of the proposal. Docks and DNR officials were in contact throughout the process. When DNR evaluators became concerned about the effect of the project on a large weedbed used for fish spawning, the parties agreed that a contract could issue to dredge 5,000 cubic yards in another area, and that assessment process would continue with respect to the remainder of the application.

As the evaluation continued, DNR resource managers raised other concerns over a one-acre "emergent/submergent open-water wetland" that would be eliminated by the dredging. DNR felt that the project would destroy the wetland, which is unusual in the Lake Superior area and serves as a habitat for fish and wildlife. It also felt that the proposal was contrary to state wetland policies codified in Wis. Adm. Code sec. NR 1.95. Other DNR personnel concluded that a second fish and wildlife habitat area—one with

"unique and uncommon" aquatic vegetation—would be adversely affected by Docks' proposal. Generally, all DNR personnel involved in the investigation objected to the project.

After the final assessment and all the reports were sent to Docks, Robert Holmgren, Docks' manager, wrote to DNR disagreeing with some of the agency's conclusions and stating that, in his opinion, siltation from a nearby creek would ruin the open water beds if the area was not dredged. Holmgren also stated that he believed the dredging would aid navigation and provide a better habitat for fish.

DNR then issued a document entitled "Findings of Fact and Order" in which it determined that the proposed dredging would destroy or seriously impair two resources in the area: (1) a one-acre aquatic habitat providing spawning areas for eight fish species and cover for all twenty-four species found in the area; and (2) a one-acre open-water wetland which is "uncommon in Lake Superior," and which provides additional waterfowl and wildlife habitat. Concluding that the project would "not be consistent with the public interest in the navigable waters involved, including fish and game habitat, and [would] cause environmental pollution," DNR denied Docks' application.

Docks petitioned the circuit court for review of the order, claiming, among other things, that DNR's decision was not supported by substantial evidence. Docks also argued to the court that the agency should be estopped from rejecting the contract because of prior actions it had taken with respect to the initial development of the Port Superior Marina.

The trial court reviewed the reports and evaluations supporting DNR's decision and also considered Docks' objections to several of the agency's conclu-

sions. The court determined that "many of the factual issues remain in dispute," and that because there had been no hearing, "[m]any of [Docks'] assertions are not supported in the record ...." The court also noted that several "important assertions" made by Docks were not addressed in the DNR decision. Then, ruling that the administrative record was "inadequate to conduct a meaningful review" of the case, and that a "full airing and resolution of [the] disputed and unresolved questions" was essential to that review, the court remanded the matter to the department "to conduct an administrative hearing pursuant to secs. 30.19(3)(a) and 227.57(7), Stats., on the merits of the issuance of a permit and contract and for the purpose of addressing the unresolved issues ...." The court did not rule on Docks' estoppel claim and directed DNR to take testimony on this issue as well.

## I. THE REMAND UNDER SEC. 227.57(7), STATS.

The trial court remanded the matter to the agency pursuant to sec. 227.57(7), Stats., which provides as follows:

> If the agency's action depends on facts determined without a hearing, the court shall set aside, modify or order agency action if the facts compel a particular action as a matter of law, or it may remand the case to the agency for further examination and action within the agency's responsibility.

DNR argues that the statute should not be read to give the court blanket authority to remand in all cases decided without a hearing, and that the court erred by

not limiting its inquiry to whether there was substantial evidence to support the order. The department offers no authority for its assertion, and while the intent of the statute is rather puzzling (to say the least), its language is plain and unambiguous. It provides that where the agency decision is rendered without a hearing, the reviewing court has two options: (1) "if the facts compel a particular action as a matter of law," the court must set it aside, modify it, or order the agency to take some specific action; or (2) if the facts do not compel a particular action as a matter of law, the court "may remand the case to the agency for further examination and action within the agency's responsibility." The remand authority is open-ended. It is dependent only upon the section's opening clause: "If the agency's action depends on facts determined without a hearing ...." Thus, if the court is unable to rule that the facts compel a particular action as a matter of law, it may remand; and that is what the trial court did in this case. It determined that the record was inadequate for proper review of DNR's action and sent the case back so that a reviewable record could be made. And in so doing, it acted within the broad authority granted to it by sec. 227.57(7), Stats.

When the agency holds a hearing, the court's powers are, of course, much more limited. Under sec. 227.57(6), Stats., for example, agency action following a contested case hearing may be set aside or remanded only if it is unsupported by substantial evidence in the record. What the legislature has said in sec. 227.57(7), however, is that where there is no hearing, and thus no "record" as that term is commonly understood, the question on review is not whether the agency can produce "substantial evidence" to support its decision,

but rather whether the facts compel a particular result as a matter of law.[1] If they do not, the court has broad discretion to remand so that the facts may be ascertained and developed.

■

The trial court articulated its reasons for remanding the case to the agency, and its decision was plainly the result of "a rational mental process," considering the facts and applicable law and arriving at a "reasoned and reasonable determination." *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). The remand was thus within the discretion granted to the court by sec. 227.57(7), Stats.

[1]DNR also argues that the trial court erred by considering the "factual assertions" made by Docks in papers filed in connection with the judicial review proceedings. It contends that these assertions were "outside the record" and thus could not be considered. But when the agency decides to proceed without a hearing, generating its own facts in support of its decision, there is no "record" as such. We assume that if Docks had provided its assertions to the agency in a letter of other document, that, in DNR's view, would have been sufficient, for the only "record" it refers to is the written material prepared by its staff. If, as we assume, Docks' submissions would be part of the "record" if sent to the agency, and thus could be considered by the court in the review proceedings, we do not see why the court could not consider them when presented directly.

DNR decided to proceed with the application without a hearing, thus subjecting itself to the standards of review found in sec. 227.57(7), Stats. As we have said, those standards are limited; they do not contemplate the "substantial evidence" review applicable to agency decisions based on the record made at a hearing. We see no violation of sec. 227.57(7) in the court's remand order.

## II.  THE ORDER DIRECTING DNR HEARINGS

██
As indicated, the trial court's order directed DNR to hold a hearing pursuant to sec. 30.19(3)(a), Stats. Section 30.19 deals with permits to enlarge waterways and provides that, unless a permit is granted by the department, it is unlawful to "dredge ... any artificial waterway, canal, channel, ditch, lagoon, pond, lake or similar waterway where the purpose is ultimate connection with an existing navigable stream, lake or other body of navigable water, or where any part of such artificial waterway is located within 500 feet of the ordinary high-water mark of an existing ... body of navigable water." The statute, by its terms, applies only to the dredging of artificial waterways. It has no application to dredging in natural navigable lakes such as Lake Superior. The trial court erred, therefore, insofar as its order directed the department to consider issuance of a permit under sec. 30.19.

██
DNR also argues that it was beyond the court's power to direct it to hold any hearings on the remand. The argument is largely undeveloped. It is limited to a statement in the department's brief that Docks never requested a hearing before the department, and that there is no specific provision in sec. 227.57(7), Stats., authorizing the court to order the agency to hold hearings. We will accept both facts as true, but neither is dispositive. Section 227.57(7) empowers the court to remand to DNR for "action within the agency's responsibility." And the department's own rules contemplate hearings under sec. 227.42, Stats.,[2]

---

[2]Section 227.42, Stats., gives any person whose "substantial interest[s]" will be "threatened with injury by agency action or

"relative to" its authority under sec. 30.20, Stats. Wis. Adm. Code, sec. NR 345.05(6). Thus, holding hearings in certain sec. 30.20 proceedings is within the agency's "responsibilit[ies]" in the area, and the fact that Docks did not request a hearing the first time around does not limit the court's power to order DNR action within the range of its responsibilities.

■

Docks argued to the trial court that because, fourteen years earlier, it had made DNR aware of its eventual plans to build additional boatslips when it applied for and received permission to build a breakwater in connection with the initial construction of the marina, the department should be estopped from denying the present application for the dredging contract. The trial court discussed the issue briefly and, noting that there was no evidentiary record on this point either, directed DNR to consider the estoppel claim at the hearings on remand. This, too, was within the court's discretion under sec. 227.57(7), Stats., and it could properly include the issue in its order remanding the case to the department.

*By the Court.*—Order reversed insofar as it directs DNR to conduct permit proceedings under sec. 30.19, Stats. In all other respects, the order is affirmed.

inaction" the right to a hearing before the agency, as long as there is no "legislative intent" that the interest is not to be protected, and as long as the injury is different in degree or kind from that suffered by the general public as a result of the agency's action or inaction.