John F. BARNES, Terry Young, Erik Brynildson, Mark Koeppl, Lu Kummerow and The Fund for Animals, Petitioners-Appellants-Petitioners,

v.

DEPARTMENT OF NATURAL RESOURCES, an agency of the State of Wisconsin, Respondent-Respondent.

Supreme Court

*No. 92–2603. Oral argument April 26, 1994.—Decided June 15, 1994.*

(Also reported in 516 N.W.2d 730.)

For the petitioners-appellants-petitioners there were briefs by *J. Reed Millsaps,* and *Maduff & Millsaps,* Chicago, Il., and oral argument by *J. Reed Millsaps.*

For the respondent-respondent the cause was argued by *Philip Peterson,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *Barnes v. Dept. of Natural Resources,* 178 Wis. 2d 290, 506 N.W.2d 155 (1993), affirming the judgment of the circuit court of Dane County, P. Charles Jones, circuit judge. The petitioners, John F. Barnes, Terry Young, Erik Byrnildson, Mark Koeppl, Lu Kummerow, and the Fund for Animals (Barnes) had petitioned the Department of Natural Resources (DNR) to add the bobcat to Wisconsin's list of threatened species pursuant to sec. 29.415(3)(c), Stats. 1991–92.[1] In August 1991, the DNR advised Barnes that it declined to add the bobcat to the list. Barnes then petitioned the circuit court for review of the DNR's determination, and the circuit court affirmed this determination. The court of appeals affirmed the judgment of the circuit court.

We affirm the decision of the court of appeals. Because we cannot conclude that the facts (here, scientific evidence) compelled the DNR to engage in a ch. 227 rulemaking procedure as a matter of law, we do not set aside the DNR's discretionary determination declining to engage in a ch. 227 rulemaking proceeding. Section 227.57(7), Stats. 1991–92. A remand to the DNR for further examination and action at this time

---

[1] Section 29.415(3)(c) provides: "The department may upon the petition of 3 persons review any listed or unlisted wild animal or wild plant if the persons present scientific evidence to warrant such a review, after which the department may by hearing and rule amend the statewide list."

would be of no avail. Section 227.57(7). *R.W. Docks &
Slips v. Dept. of Natural Resources,* 145 Wis. 2d 854,
429 N.W.2d 86 (Ct. App. 1988). Furthermore, the
DNR's determination was not outside the range of dis-
cretion delegated to it by law or otherwise an erroneous
exercise of discretion. Section 227.57(8), Stats.
1991–92.

The parties, the circuit court, and the court of
appeals cast the issue as, and focused their attention
on, the validity of DNR's refusal to list the bobcat as a
threatened species. At oral argument before this court,
however, the parties acknowledged that the central
issue before us is not whether the DNR should have
added the bobcat to the list of threatened species, but
whether in response to the Barnes petition the DNR
should have embarked on a rulemaking procedure to
determine whether the bobcat should be added to that
list.[2] At oral argument the parties also acknowledged
that if the Barnes petition were sufficient under the
statute, the appropriate remedy would be to remand
the matter to the DNR; the parties agreed that the
court could not determine whether the bobcat should
be added to that list.

This formation of the question before us is com-
pelled by the language of sec. 29.415(3)(a) governing
the formulation of the list of endangered and

---

[2] The Barnes brief asserts that "the effect of a reversal in
this case means that the WDNR would have to issue a proposed
rule listing the bobcat as either a threatened or endangered
species. The WDNR would then have to proceed with public
notice and solicit public comments on the proposed rule." Brief
at p. 41. Other parts of the Barnes brief ask this court to reverse
the decision of the DNR and direct it to list the bobcat as a
threatened or endangered species. Brief at 42.

threatened species,[3] sec. 29.415(3)(c) governing petitions to the DNR to review the status of any listed or unlisted wild animal,[4] as well as Wis. Admin. Code NR 27.04, the administrative rule the DNR promulgated to implement sec. 29.415(3)(c).[5] Accordingly, the question we address is the following: Did the DNR err in refus-

---

[3] Section 29.415(3)(a), Stats. 1991–92, provides: "The department shall by rule establish an endangered and threatened species list. . . . Wisconsin endangered species shall be compiled by issuing a proposed list of species approaching statewide extirpation. Wisconsin threatened species shall be compiled by issuing a proposed list of species which appear likely, within the foreseeable future, to become endangered. Issuance of the proposed lists shall be followed by solicitation of comments and public hearing. Wild animals and wild plants shall be deemed approaching statewide extirpation if the department determines, based upon the best scientific and commercial data available to it, after consultation with other state game directors, federal agencies and other interested persons and organizations, that the continued existence of such wild animals and wild plants in this state is in jeopardy."

[4] Section 29.415(3)(c), Stats. 1991–92, provides as follows: "The department may upon the petition of 3 persons review any listed or unlisted wild animal . . . if the persons present scientific evidence to warrant such a review, after which the department may by hearing and rule amend the statewide list."

[5] NR 27.04 provides as follows:

"(1) Petition for changes. (a) Requirements. Any 3 persons may petition the department to review the status of any listed or unlisted wild animal or wild plant. Such petitions must be dated, in writing, and submitted to the ENS. To be considered, requests must show in full the following information:
1.   Names and addresses of persons petitioning;
2.   Designation of the particular species in question;
3.   Narrative explanation of the request;
4.   Complete scientific supporting data for the request including evidence of Wisconsin residency, past numbers and geographic distribution, current numbers and geographic distribution, a sub-

ing to engage in a ch. 227 rulemaking proceeding in accordance with sec. 29.415(3)(c) and the provisions of ch. 227, Stats. 1991–92, in response to the Barnes petition to add the unlisted bobcat to Wisconsin's list of threatened species?[6] Applying the statutory standards of review, we affirm the determination of the DNR. Because we cannot conclude that the facts (here, scientific evidence) compelled the DNR to engage in a ch. 227 rulemaking procedure as a matter of law, we do not set aside the DNR's discretionary determination declining to engage in a ch. 227 rulemaking proceeding. Section 227.57(7), Stats. 1991–92. The DNR investigated the matter and its written materials are before us. A remand to the DNR for further examination and action at this time would be of no avail. Section 227.57(7), Stats. 1991–92. *R.W. Docks & Slips v. Dept. of Natural Resources,* 145 Wis. 2d 854, 429 N.W.2d 86 (Ct. App. 1988). Furthermore, the DNR's determination declining to engage in a rulemaking proceeding was not outside the range of discretion delegated to it by law or otherwise an erroneous exercise of discretion. Section 227.57(8), Stats. 1991–92.

---

stantial decline in numbers, and a substantial threat to remaining numbers or habitat or both; and

5. Signatures of the persons making the request.

(b) Review. If the department finds the petitioners have presented substantial evidence to warrant review, the department shall proceed in accordance with ch. 227, Stats."

[6] Because we construe the question in this case to be whether the DNR erred in refusing to hold a rulemaking hearing, we need not address issues raised by the parties concerning review of a DNR decision not to add a wild animal to Wisconsin's list of threatened species.

## I.

We can summarize the facts as follows. Barnes petitioned the DNR to review the unlisted status of the bobcat and to designate it a threatened species pursuant to sec. 29.415(3)(c). The petition complied with the technical requirements of the statute, setting forth the names, addresses and signatures of at least three petitioners and a narrative explanation of the request to designate the bobcat as a threatened species. The petition explained that historically, bobcats were found throughout Wisconsin, but that they have been reduced to one fifth of their former range. It included data gathered by the DNR since 1980 concerning bobcat hunting and trapping permits and bobcat kills. Barnes noted that although the number of hunting and trapping permits rose from 1980–89, the number of bobcats killed rose only until 1987 and then began to drop. On the basis of this data, Barnes argued that the number of bobcats killed per permit declined precipitously in 1988 and 1989. Barnes reasoned that if the bobcat population were stable, roughly the same number of bobcats per permit would be killed over time and that the declining number of kills implied a decline in the bobcat population. The petition cited information purporting to show that the decline in bobcats killed could not be explained by changes in the snow cover in the northern Wisconsin counties where most bobcats are killed.

The Barnes petition noted that the bobcat evolved as a predator, bearing few young; it is thus ill-equipped as a species to cope with overharvesting by hunters and trappers. The Barnes petition asserted that the DNR had poorly managed the Wisconsin bobcat population by attempting to maintain the population at the 1970s level, with no accurate estimate of what that base pop-

ulation has been. According to the petition, it was irresponsible for the DNR to allow continued hunting and trapping of bobcats given the indications from the hunting data that the bobcat population was not stable and the general lack of good information about the number of bobcats in existence in the state. The Barnes petition further claimed that the bobcat's continued existence in Wisconsin is in jeopardy and that it is thus qualified for inclusion on the state's list of threatened species under sec. 29.415(3).

In review of and in response to this petition, the DNR prepared an "Environmental Analysis and Decision on the Need for an Environmental Impact Statement." This Analysis included a survey of the scientific literature on the bobcat and its management and assessments of the stability of Wisconsin's bobcat population prepared both by DNR staff and two wildlife biologists not connected with the DNR. The assessments were based in large part on hunting and trapping data and on information gleaned from bobcat carcasses.

In its 1989 assessment of the status of Wisconsin's bobcat population, the DNR staff indicated that its models suggest that there were approximately 1500 bobcats in Wisconsin. Neither annual mortality rates nor winter track counts indicated that the bobcat population was declining. The assessment concluded that limiting the annual bobcat harvest by quota, a proposal then under discussion, was unnecessary. The staff noted that at least 150 bobcats would have to be harvested annually in order to ensure the continued accuracy of the population model used by the DNR.

The two outside wildlife biologists, Drs. L.B. Keith and Stan Temple of the University of Wisconsin Department of Wildlife Ecology, expressed concern

over the stability of the bobcat population, but agreed that the data with respect to whether the bobcat is a threatened species are inconclusive. Keith's analysis of the data yielded mean estimates of 670 and 1,176 bobcats, well below the DNR's estimate of 1500. In addition, he pointed to other factors suggesting that even his estimates were too high. He concluded:

> For reasons that I think are clear to everyone at WDNR, none of the 4 available indices to bobcat population trends in Wisconsin by itself is satisfactory. That is, neither the registered harvest, the harvest per licensed hunter, the track count index, nor the scent-post survey are presently capable of tracking the year-to-year or long-term population trends. *What this obviously means is that WDNR cannot demonstrate a stationary population, nor can the advocates of more protection demonstrate a population decline.* I suggest that obtaining an accurate annual population index, whose precision can be estimated and is acceptable, should be a high-priority item. You will note that one "possible" conclusion from the analysis I conducted is that the Wisconsin bobcat population is declining. (Emphasis in original.)

Professor Temple also complained about the lack of reliable data on Wisconsin's bobcat population. Temple noted that the DNR's bobcat management program was clearly deficient in some respects, most notably the lack of an accurate estimate of the population size. He observed that "[a]llthough the petition by Barnes et al. raise some important issues, they are no more able to prove any of their assertions than the DNR is able to prove theirs. The reason for this stand off—with each side arguing their case on the basis of inconclusive evidence—is a lack of accurate information on the size

of the Wisconsin bobcat population." Temple criticized the reliability of the methods used by both the Wisconsin and Minnesota departments of natural resources to calculate the estimate of 1500 bobcats in Wisconsin. In contrast, he estimated the population at about 872 bobcats. Although Temple expressed concern that the rising proportion of kittens in the 1983–88 harvest suggested bobcat overharvesting, he could not conclude that the bobcat population in Wisconsin is threatened.[7]

The DNR concluded that it did "not feel at this time that classifying [the] bobcat as a threatened species [was] necessary." The DNR characterized the data relied upon by the petitioners as "very questionable—based mainly on the harvest rate which varies greatly due to hunting conditions and fur prices." The DNR observed that the "general opinion of biologists in Wisconsin is that the bobcat population is nearly stable or slightly declining. A slightly declining population does not mean that the population is threatened."

The DNR's Environmental Analysis considered four alternatives for bobcat population management: (1) retaining the present policy unchanged, (2) adding the bobcat to the state's list of threatened species, (3) listing the bobcat as a unique protected species, and (4) developing a quota system for bobcat harvest. The DNR concluded that the quota system was the preferred alternative.[8] After soliciting public comment, but without conducting a public hearing, the DNR concluded that "there is no basis to list the bobcat as a

---

[7] In reviewing the analyses of these two biologists, DNR staff asserted that they found errors. Adjusted for these errors, Keith's mean estimates of pre-birth bobcat populations would be 960 and 1920 and Temple's estimate would be 1100.

[8] The DNR established a quota system for bobcats pursuant to this recommendation.

threatened species for there is no evidence to support a finding that the bobcat is likely within the foreseeable future, on the basis of scientific evidence to become endangered."

Barnes petitioned the circuit court to review the DNR's determination pursuant to sec. 227.53,[9] arguing that the DNR's decision declining to list the bobcat as a threatened species was not supported by substantial evidence. Barnes argued that where scientific data are inconclusive, the DNR should err on the side of caution and add the bobcat to the list. The circuit court affirmed the DNR's decision on the grounds that lack of information is not a basis for listing a species as threatened. The court of appeals affirmed.

## II.

The question before this court is not whether the DNR erred in refusing to add the bobcat to the list of threatened species, but rather whether the DNR erred in refusing to engage in a ch. 227 rulemaking proceeding.

Our review of the DNR's decision not to engage in a ch. 227 rulemaking proceeding must begin with an appraisal of the legislature's intent in enacting sec. 29.415 which requires designation and protection of endangered and threatened species. From the statute's statement of purpose, sec. 29.415(1), it is clear that the legislature intended this statute to complement the federal Endangered Species Act by strengthening the potential for the continued existence of endangered and threatened species within this state. It sets forth

---

[9] Section 227.53(1), Stats. 1991–92, provides: "Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.52 shall be entitled to judicial review thereof as provided in this chapter."

legislative findings that individuals and government agencies "are tending to destroy the few remaining whole plant-animal communities in this state" and explains that preservation of these communities "is of the highest importance." Thus the legislature's intent to protect and maintain Wisconsin's wild animals and wild plants is clear.

The legislature entrusted to the DNR the responsibility of formulating a list of species eligible for protection under the act. Section 29.415(3)(a) requires the DNR to establish a list of endangered and threatened species. Threatened and endangered species are treated separately in the statute.[10] A threatened species is defined by sec. 29.415(2)(b) as "any species of wild animals or wild plants which appear likely, within the foreseeable future, on the basis of scientific evidence to become *endangered.*" (Emphasis added.) The word "endangered" is not defined in the statute but the phrase "endangered species" is defined by sec. 29.415(2)(a) as a species "whose continued existence as a viable component of this state's wild animals . . . is determined by the department to be in jeopardy on the basis of scientific evidence." We use the word "protected" to refer to both endangered and threatened species.

In compiling the initial list of threatened species, the DNR was required to issue a proposed list of "species which appear likely, within the foreseeable future, to become endangered." Section 29.415(3)(a), Stats.

---

[10] The DNR's brief asserts that Barnes presents the issue of whether the bobcat is threatened, not endangered. We need not decide, as the Barnes brief urges, that although sec. 29.415 separates species into endangered and threatened categories, the statute treats the two the same except under sec. 29.415(6)(b).

1991–92. This is the same language as the legislature uses to define threatened species in sec. 29.415(2)(b).[11] Issuance of the proposed list was to be followed by solicitation of comments and a public hearing. The DNR has listed numerous species, although very few mammals are included as endangered or threatened. *See* Wis. Admin. Code NR 27.03.

A recurring strain in sec. 29.415 is that the DNR is to formulate and revise the state's list of protected species on the basis of scientific data. *See* sec. 29.415(2)(a) ("scientific evidence"); sec. 29.415(2)(b) ("scientific evidence"); sec. 29.415(3)(a) ("best scientific and commercial data available"); sec. 29.415(3)(b) ("scientific data"); sec. 29.415(3)(c) ("scientific evidence"), Stats. 1991–92.

The legislature mandated a process of careful consideration by the DNR of which species are to be included on the state's list of protected species. In doing so, the legislature intended to ensure judicious use of the agency's resources for protecting endangered and threatened species. The statute balances concern for conservation of the state's wildlife against the potential

---

[11] The legislature sets forth a similar procedure for compiling a list of endangered species. In compiling a list of endangered species the DNR issues "a proposed list of species approaching statewide extirpation. . . . Wild animals . . . shall be deemed approaching statewide extirpation if the department determines, based upon the best scientific and commercial data available to it, after consultation with other state game directors, federal agencies and other interested persons and organizations, that the continued existence of such wild animals and wild plants in this state is in jeopardy." Section 29.415 (3)(a), Stats. 1991–92. Thus sec. 29.415(3)(a) uses the same language to refer to endangered species as the definition of endangered species in sec. 29.415(2)(a).

for unnecessarily lengthening the list of protected species.

This case arose after the DNR had established a list of threatened species under sec. 29.415(3)(a). The legislature requires the DNR to review the list periodically and authorizes the DNR, following public hearing, to revise it. Section 29.415(3)(b), Stats. 1991–92.[12] This case, however, does not fall within the statute governing the DNR's periodic review of the list under sec. 29.415(3)(b).

In this case persons outside the DNR have petitioned the DNR to review the status of an unlisted species, asserting that the bobcat is threatened. We therefore must examine sec. 29.415(3)(c), the statutory provision governing such petitions.

From its enactment in 1971, the statute has provided a mechanism for persons to petition the DNR for revisions of the list. The original Endangered Species Act provided that on the petition of three persons, the DNR "shall" review "any fish and wildlife *on the statewide list* if such persons present scientific evidence to warrant such a review, after which the department may by hearing and order amend the statewide list." Section 29.415(3)(c), Stats. 1971–72 (emphasis added). In other words, this provision apparently empowered individuals to petition the DNR to remove a particular species from the list, but not to add it to the list of endangered species.

---

[12] Section 29.415(3)(b) provides: "The department shall periodically review and, following public hearing, may revise its endangered and threatened species list. A summary report of the scientific data used to support all amendments to the state's endangered and threatened species list shall be maintained by the department."

In 1977, sec. 29.415 was amended to protect not only endangered species, but threatened species as well. 1977 Wis. Laws ch. 370. The provision allowing persons to petition the DNR to amend the list was changed to permit three persons to seek review of any "listed or unlisted wild animal or wild plant." Rather than stating that the DNR "shall" review the status of a species whenever scientific evidence warrants such review, sec. 29.415(3)(c) as adopted in 1977 provides that the DNR "may" review any listed or unlisted wild animal if the petitioners "present scientific evidence to warrant" such a review.

Section 29.415(3)(c), Stats. 1991–92, provides as follows: "The department may upon the petition of 3 persons review any listed or unlisted wild animal . . . if the persons present scientific evidence to warrant such a review, after which the department may by hearing and rule amend the statewide list."

The 1977 change suggests that a legislative intent to broaden the role of persons outside the DNR in formulating the list of endangered and threatened species, without requiring the DNR to engage in rulemaking in response to every petition presenting scientific evidence. By providing that the DNR "may" review any listed or unlisted wild animal and "may by hearing and rule amend the statewide list" of protected species, the legislature committed such decisions to the sound discretion of the DNR.

Unfortunately sec. 29.415(3)(c) does not clearly specify the steps the DNR must take when a petition is filed. The DNR has adopted a rule, Wis. Admin. Code NR 27.04(1), setting forth a procedure for submission and consideration of petitions similar to the one the legislature created for the DNR to follow when it initially establishes the list. Under NR 27.04(1), the

petition must include the following information: the names, addresses, and signatures of persons petitioning; designation of the particular species in question; a narrative explanation of the request and "[c]omplete scientific supporting data for the request including evidence of Wisconsin residency, past numbers and geographic distribution, current numbers and geographic distribution, *a substantial decline in numbers and a substantial threat to remaining numbers or habitat or both.*" (Emphasis added.) The rule goes on to state that "if the department finds the petitioners have presented substantial evidence to warrant a review, the department shall proceed in accordance with ch. 227, Stats." Wis. Admin. Code NR 27.04(1)(b).

Under the statutory scheme as interpreted by the rule, the DNR's role is to propose inclusion of a species on the threatened list on the basis of scientific evidence either at the creation of the list, at its periodic review of the list, or at the request of three petitioners. The DNR proposes inclusion of a wild animal as a threatened species if the species appears "likely, within the foreseeable future, to become endangered." Sections 29.415(2)(b), (3)(a), Stats. 1991–92. Both parties correctly equate the statutory phrase "likely, within the foreseeable future, to become endangered" with the phrase "likely, within the foreseeable future, that its continued existence will be in jeopardy."[13] In keeping with this standard, the DNR rule requires the petition-

---

[13] Both the DNR's brief and the Barnes brief agree that because sec. 29.415 defines "threatened species" by reference to the word "endangered," the phrase "in jeopardy," which is used in the statute to describe an endangered species, also applies to a threatened species.

Thus both parties appear to define a threatened species as any species which is likely to become an endangered species

ers to provide scientific information showing "a substantial decline in numbers and a substantial threat to remaining numbers or habitat or both."

To summarize, under sec. 29.415(3)(c) and Wis. Admin. Code NR 27.04, the petitioners are to present scientific evidence from which the DNR may conclude that it appears likely, within the foreseeable future, that the species will become endangered, or in other words, that the species' continued existence appears likely within the foreseeable future to be in jeopardy. To do that, the petitioners must demonstrate a substantial decline in the numbers of the species in the state and a substantial threat to the remaining numbers or habitat of the species. Section 29.315(3)(a) and (3)(c) and Wis. Admin. Code NR 27.04(1)(a)4.

The DNR's responsibility as custodian of Wisconsin's wildlife is to review and evaluate the scientific evidence presented by the petitioners fairly and impartially. The DNR is not required to rely solely on the representations of the petitioners, but may undertake its own analyses of the scientific data and solicit opinions from experts within and outside the DNR. This review and evaluation of the scientific evidence is not undertaken to prove the petitioners wrong, but rather, to fulfill the DNR's legislative mandate to gather scientific evidence for purposes of rulemaking, to maintain a balance between protection of wildlife and exploitation of the state's resources, and to conserve the wild plant and animal species of Wisconsin.

In this case, the DNR advised Barnes that it would not add the bobcat to Wisconsin's list of threatened species, because the DNR determined that it did not appear likely in the foreseeable future that the bobcat

within the foreseeable future. 68 Wis. O.A.G. 9, 10 (OAG 6–79, 1979).

would become endangered. The DNR should have advised Barnes that the scientific evidence did not demonstrate a likelihood that bobcats would become endangered in the foreseeable future and that therefore the DNR would not engage in a ch. 227 rulemaking proceeding. We examine next the standard of review applicable to the DNR's determination not to engage in a ch. 227 rulemaking proceeding.

### III.

The DNR has reviewed the status of an unlisted wild animal on the basis of the scientific evidence available and rendered a discretionary decision not to engage in a ch. 227 rulemaking proceeding. Even though the case is before us on review of the decision of the court of appeals, we are in reality reviewing the DNR's decision. *Richland School Dt. v. Dept. Industry, Labor and Human Relations,* 174 Wis. 2d 878, 890, 498 N.W.2d 826 (1993). To review the DNR's decision, we must decide the appropriate standard of review.

Several standards set forth in sec. 227.57 for review of administrative determinations are applicable to this case: Our review is confined to the record. Section 227.57(1), Stats. 1991–92. The court must affirm the DNR's action unless it finds a ground for not doing so. Section 227.57(2), Stats. 1991–92.[14] The court is to treat separately "disputed issues of agency procedure, interpretations of law, determinations of fact or policy within the agency's exercise of delegated discretion." Sec. 227.57(3), Stats. 1991–92. If the agency's action depends on facts determined without a hearing, the

---

[14] Section 227.57(2) provides: "Unless the court finds a ground for setting aside, modifying, remanding or ordering agency action or ancillary relief under a specified provision of this section, it shall affirm the agency's action."

court shall set aside, modify or order agency action if the facts compel a particular action as a matter of law, or it may remand the case to the agency for further examination. Section 227.57(7), Stats. 1991–92. If the agency is exercising its discretion, the court shall reverse or remand if it finds that the exercise of discretion is outside the range of discretion delegated to the agency by law. Section 227.57(8), Stats. 1991–92. The legislature also requires a court to accord "due weight" to the "experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." Section 227.57(10), Stats. 1991–92. Furthermore, the statutes admonish a court not to "substitute its judgment for that of the agency on an issue of discretion." Section 227.57(8).[15]

The legislature delegated to the DNR the task of determining which wildlife in this state should be protected under sec. 29.415. Consideration of a petition to review the status of any listed or unlisted wild animal is clearly committed to the DNR's discretion. Section 29.415(3)(c) expressly states that the DNR "may" review such petitions and "may" amend the statewide threatened species list by hearing and rule. Thus this case involves the DNR's exercise of discretionary authority. Discretion contemplates a process of reason-

_____

[15] Section 227.57(8) provides: "The court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is outside the range of discretion delegated to the agency by law; is inconsistent with an agency rule, an officially stated agency policy or a prior agency practice, if deviation therefrom is not explained to the satisfaction of the court by the agency; or is otherwise in violation of a constitutional or statutory provision; but the court shall not substitute its judgment for that of the agency on an issue of discretion."

ing. According to the statute, the DNR is to act on the basis of scientific evidence and consistent with the applicable law.

## IV.

The Barnes petition included scientific evidence, primarily based on harvest statistics, purporting to show that the bobcat population in Wisconsin was declining. The record demonstrates that many, but not all, of the scientific analyses of the bobcat population are based on information gathered from the bobcat harvest. Thus it would be incorrect to dismiss an argument that the bobcat population is declining simply on the grounds that harvest data is *per se* unreliable. Harvest data can be compared to and complemented by other information; it can be analyzed, perhaps more sensitively, by different methods; and a variety of conclusions can be drawn from the same set of data.

As it should, the DNR supplemented the information included in the petition. It subjected the available data to different methods of analysis and to evaluation by wildlife biologists outside the DNR. The clear conclusion to be drawn from the information included in the record and from the opinions of the experts is that the evidence concerning the population of bobcats is inconclusive. Indeed, both University of Wisconsin wildlife biologists made clear that the absence of information concerning bobcat numbers handicapped their analyses of the stability of the statewide population. Nonetheless, they could not conclude on the basis of the information available that the bobcat is a threatened species. They urged the DNR to undertake further study of the bobcat population to determine with greater certainty whether it is, in fact, declining. Inherent in the DNR's duty to review and revise the list of

protected species is a responsibility to monitor potentially declining wild animal and plant populations. Section 29.415(3)(b).

Following this review and evaluation of the Barnes petition and the scientific evidence about the bobcat, the DNR concluded, without a public hearing, that the bobcat did not appear likely, within the foreseeable future, to become endangered. As we have explained, the DNR was required under the statute only to determine whether it should engage in a ch. 227 rulemaking proceeding. The scientific evidence does not support the Barnes petition that it appears likely, within the foreseeable future, that the bobcat will become endangered. On the other hand, the scientific evidence upon which the DNR relied does not demonstrate that the bobcat population is healthy. The evidence is simply inconclusive.

Barnes invites us to hold, as a matter of law, that when evidence about the stability of a population is inconclusive, the DNR ought to err on the side of caution and designate the species as protected, or at least engage in a ch. 227 rulemaking proceeding. Barnes stresses the legislature's intent to conserve the state's wildlife and its use of the term "in jeopardy" to describe the status of the wild animals and plants that are to be included on the state's list of protected species.[16] For support, Barnes cites *Northern Spotted Owl v. Hodel,* 716 F. Supp. 479 (W.D. Wash. 1988), which states that when "none [of the experts] concluded that the northern spotted owl is not at risk of extinction[,]" the owl

---

[16] Barnes argues that the common usage of the term "in jeopardy" is at risk, at peril, or in danger. Barnes contends, however, that jeopardy should be interpreted to mean that something merely be at risk or at peril in an evenly divided game.

should be protected. In the case at bar, Barnes contends that none of the experts concluded that the bobcat is not in jeopardy. Thus it follows, Barnes argues, that the DNR's decision not to add the bobcat to Wisconsin's list of threatened species is arbitrary and capricious.

Barnes misconstrues the logic of *Northern Spotted Owl*. All of the experts in that case agreed that the owl would become extinct unless the Fish and Wildlife Service designated it as an endangered species; no expert stated that the spotted owl was not at risk of extinction. The court considered the Service's decision not to protect the owl arbitrary and capricious because the Service failed to cite any evidence that the spotted owl was not at risk of extinction. *Northern Spotted Owl*, 716 F. Supp. at 482–483.

The facts of the case at bar are very different. Here no expert stated that the bobcat is threatened. No expert concluded that there was scientific evidence showing that the bobcat was likely, within the foreseeable future, to become endangered. As the Barnes brief concedes, the evidence shows that "it was impossible to tell whether the bobcat was threatened or non-threatened." Brief at p. 39. The DNR has cited evidence suggesting that the bobcat population is stable or slightly declining and has concluded that the decline does not render the bobcat a threatened species.

For Barnes to succeed we must accept his contention that "if it is an even call whether the bobcat is at risk or danger, it is in jeopardy." Neither the DNR nor this court interprets the statute as Barnes does. By emphasizing that the species be designated as protected upon the basis of available scientific evidence, the legislature envisioned that some showing be made that a species is in need of protection. To construe

unproven decline as justifying inclusion on the state's list of threatened species would undermine the legislative policy of targeting the DNR's resources to those species proven to be in need of protection.

Perhaps most important, the legislature committed to the DNR's sound discretion the determination of which species should be protected in Wisconsin. This discretion is not unfettered. Implicit in the DNR's obligation to review and revise the list is a responsibility to monitor potentially declining animal and plant populations so that scientific evidence will be available. But there is no indication in the case at bar that the DNR abdicated its responsibility or did anything but thoroughly evaluate and carefully consider the Barnes petition to add the bobcat to Wisconsin's list of threatened species.

Applying the statutory standards of review, we affirm the DNR's determination. Because we cannot conclude that the facts (here, scientific evidence) compelled the DNR to engage in a ch. 227 rulemaking procedure as a matter of law, we do not set aside the DNR's discretionary determination declining to engage in a ch. 227 rulemaking proceeding. Section 227.57(7), Stats. 1991–92. The DNR investigated the matter and its written materials are before us. A remand to the DNR for further examination and action at this time would be of no avail. Section 227.57(7). *R.W. Docks & Slips v. Dept. of Natural Resources,* 145 Wis. 2d 854, 429 N.W.2d 86 (Ct. App. 1988). Furthermore, the DNR's determination declining to engage in a rulemaking proceeding was not outside the range of discretion delegated to it by law or otherwise an erroneous exercise of discretion. Section 227.57(8), Stats. 1991–92.

For the reasons set forth, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.