Joseph E. KOLL, Jr., Petitioner-Respondent,†

v.

DEPARTMENT OF JUSTICE OF the STATE OF WISCONSIN,
Respondent-Appellant.

Court of Appeals

*No. 2008AP2027. Submitted on briefs December 11, 2008.
—Decided April 1, 2009.*

2009 WI App 74

(Also reported in 769 N.W.2d 69.)

† Petition to review filed.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Robert M. Hunter*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Alexander L. Ullenberg* of *Ullenberg Law Offices*, Fond du Lac.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. SNYDER, J. The Department of Justice appeals from an order requiring the DOJ to issue a handgun permit to Joseph E. Koll, Jr. The DOJ contends that the circuit court erred when it reversed a DOJ decision to deny Koll's permit request based on a conviction for disorderly conduct in 1998. At issue is whether Koll was convicted of a misdemeanor crime of domestic violence, as defined 18 U.S.C. § 921(a)(33)(A)(2006),[1] which would preclude Koll from obtaining a handgun. Our review of the record reveals that Koll was convicted of "non-domestic" disorderly conduct; however the charging documents describe a domestic relationship between Koll and the victim. That is sufficient, under *United States v. Hayes*, 555 U.S. ___, 129 S. Ct. 1079 (2009), to serve as a predicate offense barring Koll from

[1] All references to the United States Code are to the 2006 version unless otherwise stated.

possessing a gun. The DOJ also appeals from an order awarding costs and fees to Koll. Because we reverse the circuit court's order to issue the gun permit, costs and fees are not available to Koll. Accordingly, we reverse both orders of the circuit court.

## BACKGROUND

¶ 2. The State charged Koll with violent disorderly conduct and battery arising from an incident that occurred on June 11, 1998.[2] The probable cause statement supporting the complaint indicated that Koll had slapped the hand and twisted the arm of his live-in girlfriend, and that when she tried to leave, Koll broke the side mirror off of the vehicle. During the course of the investigation, the police officer on the scene had the victim complete a domestic abuse packet. Ultimately, Koll pled no contest to two counts of disorderly conduct, specifically described as "non-domestic," and was convicted under WIS. STAT. § 947.01 (1997–98).[3] The circuit court imposed and stayed a sentence of ninety days in jail on each count, to be served consecutively. The court then placed Koll on probation for three years and ordered him to participate in "Domestic Abuse Perpetrator's" counseling.

¶ 3. On December 10, 2007, Koll attempted to purchase a handgun at a local retailer. The DOJ denied his request. Koll then submitted his fingerprints for

---

[2] Record documents show that a second incident, involving the same complainant, occurred on July 2, 1998; however, the criminal complaint and the judgment of conviction relate only to the events of June 11.

[3] Koll was convicted under the 1997–98 version of the Wisconsin Statutes. All subsequent references to the Wisconsin Statutes are to the 2007–08 version.

verification, but was again denied. On December 28, Koll requested a review of the decision before the administrator of the Division of Law Enforcement Services. On January 9, 2008, the administrator summarily denied Koll's request, citing the 1998 conviction as running counter to the Gun Control Act, 18 U.S.C. § 921(a)(33). Applying the federal law, the administrator concluded that Koll's convictions involved "misdemeanor crime[s] of domestic violence."

¶ 4.  Koll sought review of the agency decision in circuit court. The court conducted a hearing on June 16, 2008. At that hearing, the DOJ argued that it had merely applied the federal law and had "no discretion in [the] matter" once it looked at the "underlying complaint" and determined the case involved a domestic relationship. In other words, because the complaint alleged that Koll did "unlawfully cause domestic abuse to another," and because the disposition required Koll to attend domestic abuse counseling, the DOJ denied the handgun permit under the Gun Control Act.

¶ 5.  The circuit court was not persuaded and held in favor of Koll. It relied on the "non-domestic" characterization of the offense for which Koll was convicted. The court ruled that the department wrongfully withheld the gun permit and ordered the permit to issue. The DOJ appeals.

## DISCUSSION

¶ 6.  We begin by noting that we review the agency decision, not the decision of the circuit court. *Beecher v. LIRC*, 2004 WI 88, ¶ 22, 273 Wis. 2d 136, 682 N.W.2d 29. Generally, an agency action may be set aside or remanded only if it is unsupported by substantial

evidence in the record. *R.W. Docks & Slips v. DNR*, 145 Wis. 2d 854, 860, 429 N.W.2d 86 (Ct. App. 1988). However, "where there is no hearing, and thus no 'record' as that term is commonly understood, the question on review is not whether the agency can produce 'substantial evidence' to support its decision, but rather whether the facts compel a particular result as a matter of law." *Id.* at 860–61; *see also* WIS. STAT. § 227.57(7). Accordingly, we must determine whether Koll's conviction for disorderly conduct prohibits him, under 18 U.S.C. § 921(a)(33)(A), from exercising his constitutional right to bear arms.

■

¶ 7.   Since its inception in 1968, the Gun Control Act has barred felons from possessing firearms. In 1996, Congress extended the prohibition on gun possession to persons convicted of a misdemeanor crime of domestic violence. *See* 18 U.S.C. § 922(g)(9). Although Koll's predicate offense was labeled "non-domestic," the criminal complaint indicates that Koll's conduct was directed against the woman with whom he lived. He does not dispute cohabiting with the victim; however, Koll asserts that the Gun Control Act targets convictions for misdemeanor crimes that include, *as an element,* a domestic relationship. Because the State was not required to prove a domestic relationship to obtain a conviction for disorderly conduct, Koll argues, the gun possession ban does not apply to him.

¶ 8.   In the Gun Control Act, Congress defined a misdemeanor crime of domestic violence to mean an offense that:

> **(i)** is a misdemeanor under Federal, State, or Tribal law; and

**(ii)** has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A)(footnote omitted). In *Hayes*, the question before the court was: "[T]o trigger the [gun] possession ban, must the predicate misdemeanor identify as an element of the crime a domestic relationship between aggressor and victim?" 129 S. Ct. at 1082.[4]

¶ 9. The U.S. Supreme Court reasoned that construing the Gun Control Act "to exclude the domestic abuser convicted under a generic use-of-force statute (one that does not designate a domestic relationship as an element of the offense) would frustrate Congress' manifest purpose" in extending gun control laws to abusers who are not charged with felonies. *Id.* at 1087. The Court observed that in 1996, only about one-third of all states had criminal statutes specifically describing crimes of domestic violence. *Id.* Domestic abusers were routinely prosecuted under general assault or battery laws. *Id.* The Court concluded that "[g]iven the paucity

---

[4] The U.S. Supreme Court acknowledged a split in the federal circuits on the question. The majority of circuits aligned with *United States v. Smith*, 171 F.3d 617, 620 (8th Cir. 1999), which held that a predicate offense of misdemeanor domestic violence requires only "the use or attempted use of physical force" and does not require a domestic relationship as an element. In contrast, the court in *United States v. Hayes*, 482 F.3d 749, 752 (4th Cir. 2007) interpreted the definition of a misdemeanor crime of domestic violence to include two elements, one of force and one of the specified domestic relationship.

of state and federal statutes targeting *domestic* violence, we find it highly improbable that Congress meant to extend . . . [its] firearm possession ban only to the relatively few domestic abusers prosecuted under laws rendering a domestic relationship an element of the offense." *Id.* at 1087–88. Ultimately, the Court held:

> The text, context, purpose, and what little there is of drafting history all point in the same direction: Congress defined "misdemeanor crime of domestic violence" to include an offense "committed by" a person who had a specified domestic relationship with the victim, whether or not the misdemeanor statute itself designates the domestic relationship as an element of the crime."

*Id.* at 1089.

¶ 10. We conclude that the DOJ properly denied Koll's application for a gun permit. The 1998 conviction for disorderly conduct arose from an event involving Koll and his live-in girlfriend. This falls within the definition provided in 18 U.S.C. § 921(a)(33)(A)(ii), which provides that a domestic relationship exists where the aggressor and the victim are cohabiting or have cohabited. Koll, therefore, has committed a predicate misdemeanor crime of domestic violence as that term is used in the Gun Control Act, and he may not possess a firearm. The DOJ properly denied his request for a gun permit.

¶ 11. The DOJ also appeals from the circuit court's order for costs and fees under Wis. Stat. §§ 814.245(3) and 227.485. Because we reverse the underlying order, we also reverse the award of costs and fees.

## CONCLUSION

¶ 12. The question before us is whether Koll's conviction for disorderly conduct prohibits him, under the Gun Control Act, from exercising his Second

759

Amendment right to bear arms. The U.S. Supreme Court has unambiguously spoken, and the facts can lead to but one conclusion. Because Koll had a domestic relationship with the victim of his misdemeanor crime of disorderly conduct, he may not possess a gun. We reverse the orders of the circuit court.

*By the Court.*—Orders reversed.

¶ 13. ANDERSON, P.J. *(concurring)*. I write separately for three reasons. First, to point out the obvious, there is no crime entitled "disorderly conduct (nondomestic)"; second, to summarize the compelling reasons why perpetrators of domestic violence are denied access to guns; finally, to show that the Bureau of Alcohol, Tobacco, Firearms and Explosives considers the contents of the complaint and not the title or elements of the charge.

¶ 14. Koll was originally charged with two counts, disorderly conduct, in violation of WIS. STAT. § 947.01, and battery, within seventy-two hours of an arrest for domestic abuse, in violation of WIS. STAT. §§ 940.19(1) and 939.621. As part of a plea agreement, both counts were amended to "disorderly conduct (non-domestic in nature)," and the judgment of conviction reflected Koll's conviction of two counts of "disorderly conduct (nondomestic)." I have reviewed the criminal code and have not found such a crime. The judgment of conviction reflects that the two counts violated § 947.01, which does not differentiate between nondomestic and domestic disorderly conduct:

> Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor.

¶ 15. Circuit courts are not empowered to label crimes in an attempt to help a party avoid collateral consequences. It is for the legislature to decide if different types of disorderly conduct should be treated differently. When we considered the statutory scheme involving battery committed by juveniles while in a secure facility we wrote, "[T]he legislature is entitled to recognize different degrees and types of harm and to strike at what it believes 'more urgently needs repression.' "[1] *State v. Martin*, 191 Wis. 2d 646, 658, 530 N.W.2d 420 (Ct. App. 1995). It is elementary that "it is the function of the legislature to prescribe the penalty and the manner of its enforcement; the function of the courts to impose the penalty . . . ." *State v. Borrell*, 167 Wis. 2d 749, 767, 482 N.W.2d 883 (1992).

¶ 16. When Congress amended the 1968 Gun Control Act to prohibit anyone convicted of a "misdemeanor crime of domestic violence" from possessing a firearm, 18 U.S.C. § 922(g)(9), it did so for a compelling reason: the protection of victims of domestic violence. The sponsor of the amendment, Senator Frank Lautenberg, noted, "There is no question that the presence of a gun dramatically increases the likelihood that domestic violence will escalate into murder. According to one study, for example, in households with a history of battering, the presence of a gun increases the likeli-

---

[1] The United State Supreme Court has observed:

[I]t is within the power of a legislature to prescribe a rule of general application based upon a state of things which is ordinarily evidence of the ultimate fact sought to be established. "It was obviously the province of the state legislature to provide the nature and extent of the legal presumption to be deduced from a given state of facts, and the creation by law of such presumptions is, after all, but an illustration of the power to classify."

*Hawker v. New York*, 170 U.S. 189, 197–198 (1898) (citation omitted).

hood that a woman will be killed threefold." 142 Cong. Rec. S11227 (Daily ed. Sept. 25, 1996).

¶ 17. In rejecting an equal protection challenge to 18 U.S.C. § 922(g)(9), the 7th Circuit commented, "The rationale for keeping guns out of the hands of those convicted of domestic violence crimes is eminently reasonable." *United States v. Lewitzke*, 176 F.3d 1022, 1026 (7th Cir. 1999).

¶ 18. The pervasive problem of domestic violence should be well known to every circuit judge who has a criminal calendar. "Intimate partner homicides account for between one-third to one-half of all female homicides. Every year in the United States, between 1000 and 1600 women die at the hands of their male partners, often after a long and escalating pattern of battering." Brief for Brady Center to Prevent Gun Violence, et al. as Amici Curiae Supporting Petitioners, 10 (footnotes omitted), *United States v. Hayes*, 555 U.S. ___, 129 S. Ct. 1079 (2009). "Studies demonstrate that the involvement of a gun during an incident of domestic violence significantly increases the probability—making it twelve times more likely—that the encounter will result in a homicide." Brief for National Network to End Domestic Violence, et al. as Amici Curiae Supporting Petitioners, 5, *United States v. Hayes*, 555 U.S. ___, 129 S. Ct. 1079 (2009). Even if the victim is not killed, he or she is frequently injured if a gun is involved. *Id.*

¶ 19. Wisconsin is not immune from this violence. In 2006, there were 25,531 incidents of domestic violence in the state. Wisconsin Department of Justice Office of Crime Victim Services, *2006 Domestic Abuse Incident Report (DAIR)*, 3 (2007) (http://www.doj. state.wi.us/cvs/documents/DAR/2006DAR/2006DAR.pdf, last visited Mar. 11, 2009). "There were 40 domestic homicides in 19 counties in Wisconsin in 2006. The youngest victim was under one year old; the oldest was

85. Victims were most often females killed in their residence by a family member using a firearm or a knife." *Id.* at 4.

¶ 20. Preventing convicted domestic violence abusers from arming themselves also protects law enforcement. FBI statistics show that thirty percent of officers assaulted or injured when responding to a call for help were responding to a domestic violence call. Brief for Brady Center to Prevent Gun Violence, et al. as Amici Curiae Supporting Petitioners, 18, *United States v. Hayes*, 555 U.S. ___, 129 S. Ct. 1079 (2009). "A substantial number of police officer deaths result when officers respond to domestic violence incidents. Eighty-one law enforcement officers were killed when responding to domestic disturbance calls from 1996 to 2005 . . . ." *Id.* at 15–16 (footnotes omitted).

¶ 21. In closing, I note that the Bureau of Alcohol, Tobacco, Firearms and Explosives takes the position that it is the contents of the complaint that determines whether the conduct is a misdemeanor domestic violence crime. *See* Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Misdemeanor Crime Of Domestic Violence Questions And Answers* (as of April 28, 1997) ("X was convicted of misdemeanor assault on October 10, 1996. The crime of assault does not make specific mention of domestic violence but the criminal complaint reflects that he assaulted his wife. May X still possess firearms or ammunition? No. X may no longer possess firearms or ammunition.") (http://www.atf.gov/firearms/domestic/qa.htm, last visited Mar. 11, 2009). Therefore, the DOJ properly went behind the judgment of conviction and based its decision to deny Koll a permit on the contents of the complaint and police report.