*418 Justice Ginsburg
delivered the opinion of the Court.*
The federal Gun Control Act of 1968, 18 U. S. C. § 921 et seq., has long prohibited possession of a firearm by any person convicted of a felony. In 1996, Congress extended the prohibition to include persons convicted of “a misdemeanor crime of domestic violence.” § 922(g)(9). The definition of “misdemeanor crime of domestic violence,” contained in § 921(a)(33)(A), is at issue in this case. Does that term cover a misdemeanor battery whenever the battered victim was in fact the offender’s spouse (or other relation specified in § 921(a)(33)(A))? Or, to trigger the possession ban, must the predicate misdemeanor identify as an element of the crime a domestic relationship between aggressor and victim? We hold that the domestic relationship, although it must be established beyond a reasonable doubt in a § 922(g)(9) firearms possession prosecution, need not be a defining element of the predicate offense.
I
In 2004, law enforcement officers in Marion County, West Virginia, came to the home of Randy Edward Hayes in response to a 911 call reporting domestic violence. Hayes consented to a search of his home, and the officers discovered a rifle. Further investigation revealed that Hayes had recently possessed several other firearms as well. Based on this evidence, a federal grand jury returned an indictment in 2005, charging Hayes, under §§ 922(g)(9) and 924(a)(2), with *419 three counts of possessing firearms after having been convicted of a misdemeanor crime of domestic violence.
The indictment identified Hayes’s predicate misdemeanor crime of domestic violence as a 1994 conviction for battery in violation of West Virginia law.[1] The victim of that battery, the indictment alleged, was Hayes’s then-wife — a person who “shared a child in common” with Hayes and “who was cohabitating with ... him as a spouse.” App. 3.[2]
Asserting that his 1994 West Virginia battery conviction did not qualify as a predicate offense under § 922(g)(9), Hayes moved to dismiss the indictment. Section 922(g)(9), Hayes maintained, applies only to persons previously convicted of an offense that has as an element a domestic relationship between aggressor and victim. The West Virginia statute under which he was convicted in 1994, Hayes observed, was a generic battery proscription, not a law designating a domestic relationship between offender and victim as an element of the offense. The United States District Court for the Northern District of West Virginia rejected Hayes’s argument and denied his motion to dismiss the indictment. *420 377 F. Supp. 2d 540, 541-542 (2005). Hayes then entered a conditional guilty plea and appealed.
In a 2-to-l decision, the United States Court of Appeals for the Fourth Circuit reversed. A § 922(g)(9) predicate offense, the Court of Appeals held, must “have as an element a domestic relationship between the offender and the victim.” 482 F. 3d 749, 751 (2007). In so ruling, the Fourth Circuit created a split between itself and the nine other Courts of Appeals that had previously published opinions deciding the same question.[3] According to those courts, § 922(g)(9) does not require that the offense predicate to the defendant’s firearm possession conviction have as an element a domestic relationship between offender and victim. We granted certiorari, 552 U. S. 1279 (2008), to resolve this conflict.
II
Section 922(g)(9) makes it “unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence ... [to] possess in or affecting commerce, any firearm or ammunition.” Section 921(a)(33)(A) defines “misdemeanor crime of domestic violence” as follows:
“[T]he term 'misdemeanor crime of domestic violence’ means an offense that—
“(i) is a misdemeanor under Federal, State, or Tribal law; and
“(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or *421 guardian of the victim, by a person with whom the victim shares a child in common, by a person who is eohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.” (Footnote omitted.)
This definition, all agree, imposes two requirements: First, a “misdemeanor crime of domestic violence” must have, “as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon.” Second, it must be “committed by” a person who has a specified domestic relationship with the victim. The question here is whether the language of § 921(a)(33)(A) calls for a further limitation: Must the statute describing the predicate offense include, as a discrete element, the existence of a domestic relationship between offender and victim? In line with the large majority of the Courts of Appeals, we conclude that § 921(a)(33)(A) does not require a predicate-offense statute of that specificity. Instead, in a § 922(g)(9) prosecution, it suffices for the Government to charge and prove a prior conviction that was, in fact, for “an offense . . . committed by” the defendant against a spouse or other domestic victim.
We note as an initial matter that § 921(a)(33)(A) uses the word “element” in the singular, which suggests that Congress intended to describe only one required element. Immediately following the word “element,” § 921(a)(33)(A)(ii) refers to the use of force (undoubtedly a required element) and thereafter to the relationship between aggressor and victim, e. g.,' a current or former spouse. The manner in which the offender acts, and the offender’s relationship with the victim, are “conceptually distinct attributes.” United States v. Meade, 175 F. 3d 215, 218 (CAI 1999).[4] Had Con *422 gress meant to make the latter as well as the former an element of the predicate offense, it likely would have used the plural “elements,” as it has done in other offense-defining provisions. See, e. g., 18 U. S. C. § 3559(c)(2)(A) (“[T]he term ‘assault with intent to commit rape’ means an offense that has as its elements engaging in physical contact with another person or using or brandishing a weapon against another person with intent to commit aggravated sexual abuse or sexual abuse.”). Cf. Black’s Law Dictionary 559 (8th ed. 2004) (defining “element” as “[a] constituent part of a claim that must be proved for the claim to succeed <Burke failed to prove the element of proximate cause in prosecuting his negligence claim>”).[5]
Treating the relationship between aggressor and victim as an element of the predicate offense is also awkward as a matter of syntax. It requires the reader to regard “the use or attempted use of physical force, or the threatened use of a deadly weapon” as an expression modified by the relative clause “committed by.” In ordinary usage, however, we *423 would not say that a person “commit[s]” a “use.” It is more natural to say that a person “commit[s]” an “offense.” See, e. g., United, States v. Belless, 338 F. 3d 1063, 1066 (CA9 2003) (“One can ‘commit’ a crime or an offense, but one does not ‘commit’ ‘force’ or ‘use.’”).
In reaching the conclusion that § 921(a)(33)(A) renders both the use of force and a domestic relationship between aggressor and victim necessary elements of a qualifying predicate offense, the Fourth Circuit majority relied on two textual arguments. First, the court noted that clause (ii) is separated from clause (i) by a line break and a semicolon; in contrast, the components of clause (ii) — force and domestic relationship — are joined in an unbroken word flow. See 482 F. 3d, at 753.
Had Congress placed the “committed by” phrase in its own clause, set off from clause (ii) by a semicolon or a line break, the lawmakers might have better conveyed that “committed by” modifies only “offense” and not “use” or “element.” Congress’ less-than-meticulous drafting, however, hardly shows that the legislators meant to exclude from § 922(g)(9)’s firearm possession prohibition domestic abusers convicted under generic assault Or battery provisions.
As structured, § 921(a)(33)(A) defines “misdemeanor crime of domestic violence” by addressing in clause (i) the meaning of “misdemeanor” and, in turn, in clause (ii), “crime of domestic violence.” Because a “crime of domestic violence” involves both a use of force and a domestic relationship, joining these features together in clause (ii) would make sense even if Congress had no design to confine laws qualifying under § 921(a)(33)(A) to those designating as elements both use of force and domestic relationship between aggressor and victim. See id., at 761 (Williams, J., dissenting). See also United States v. Barnes, 295 F. 3d 1354, 1358-1360, 1361 (CADC 2002) (“The fact that the Congress somewhat awkwardly included the ‘committed by’ phrase in subpart (ii) (in *424 stead of adding a subpart (iii)) is not significant in view of the unnatural reading that would result if ‘committed by’ were construed to modify ‘use of force.’”).
A related statutory provision, 25 U. S. C. § 2803(3)(C), indicates that Congress did not ascribe substantive significance to the placement of line breaks and semicolons in 18 U. S. C. § 921 (a)(33)(A). In 2006, Congress amended § 921(a)(33)(A)(i) to include misdemeanors under “[t]ribal law” as predicate offenses. As a companion measure, Congress simultaneously enacted §2803(3)(C), which employs use-of-force and domestic-relationship language virtually identical to the language earlier placed in § 921(a)(33)(A)(i), except that § 2803(3)(C) uses no semicolon or line break.
Section 2803(3)(C) authorizes federal agents to “make an arrest without a warrant for an offense committed in Indian country if — ”
“the offense is a misdemeanor crime of domestic violence . . . and has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent or guardian of the victim . . . .”
At the time Congress enacted § 2803(3)(C), the Courts of Appeals uniformly agreed that § 921(a)(33)(A) did not limit predicate offenses to statutory texts specifying both a use of force and a domestic relationship as offense elements. Congress presumably knew how § 921(a)(33)(A) had been construed, and presumably intended §2803(3)(C) to bear the same meaning. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U. S. 71, 85-86 (2006) (“[W]hen ‘judicial *425 interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.’” (quoting Bragdon v. Abbott, 524 U. S. 624, 645 (1998))). Relying on spacing and punctuation to hem in § 921(a)(33)(A), while reading §2803(3)(C) to contain no similar limitation, would create a disjunction between these two provisions that Congress could not have intended.
As a second justification for its construction of § 921(a) (33)(A), the Court of Appeals invoked the “rule of the last antecedent,” under which “a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.” Barnhart v. Thomas, 540 U. S. 20, 26 (2003). The words “committed by” immediately follow the use-of-force language, the court observed, and therefore should be read to modify that phrase, not the earlier word “offense.” See 482 F. 3d, at 753-755. The rule of the last antecedent, however, “is not an absolute and can assuredly be overcome by other indicia of meaning.” Barnhart, 540 U. S., at 26.[6]
Applying the rule of the last antecedent here would require us to accept two unlikely premises: that Congress employed the singular “element” to encompass two distinct concepts, and that it adopted the awkward construction “eommi[t] ” a “use. ” See supra, at 421-423. Moreover, as the dissent acknowledges, post, at 433, the last-antecedent rule *426 would render the word “committed” superfluous: Congress could have conveyed the same Tmeaning by referring simply to the “use ... of [physical] force ... by a current or former spouse ....” See Tr. of Oral Arg. 29. “Committed” retains its operative meaning only if it is read to modify “offense.”
Most sensibly read, then, § 921(a)(33)(A) defines “misdemeanor crime of domestic violence” as a misdemeanor offense that (1) “has, as an element, the use [of force],” and (2) is committed by a person who has a specified domestic relationship with the victim. To obtain a conviction in a § 922(g)(9) prosecution, the Government must prove beyond a reasonable doubt that the victim of the predicate offense was the defendant’s current or former spouse or was related to the defendant in another specified way. But that relationship, while it must be established, need not be denominated an element of the predicate offense.[7]
Ill
Practical considerations strongly support our reading of § 921(a)(33)(A)’s language. Existing felon-in-possession laws, Congress recognized, were not keeping firearms out of the hands of domestic abusers, because “many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies.” 142 Cong. Rec. 22985 (1996) (statement of Sen. Lautenberg). By extending the federal firearm prohibition to persons convicted of “misdemeanor crime[s] of domestic violence,” proponents of §922(g)(9) sought to “close this dangerous loophole.” Id., at 22986.
Construing § 922(g)(9) to exclude the domestic abuser convicted under a generic use-of-force statute (one that does not *427 designate a domestic relationship as an element of the offense) would frustrate Congress’ manifest purpose. Firearms and domestic strife are a potentially deadly combination nationwide. See, e. g., Brief for Brady Center To Prevent Gun Violence et al. as Amici Curiae 8-15; Brief for National Network To End Domestic Violence et al. as Amici Curiae 2-8. Yet, as interpreted by the Fourth Circuit, § 922(g)(9) would have been “a dead letter” in some two-thirds of the States from the very moment of its enactment. 482 F. 3d, at 762 (Williams, J., dissenting).
As of 1996, only about one-third of the States had criminal statutes that specifically proscribed domestic violence. See Brief for United States 23, n. 8.[8] Even in those States, domestic abusers were (and are) routinely prosecuted under generally applicable assault or battery laws. See Tr. of Oral Arg. 19. And no statute defining a distinct federal misdemeanor designated as an element of the offense a domestic relationship between aggressor and victim. Yet Congress defined “misdemeanor crime of domestic violence” to include “misdemeanor[s] under Federal . . . law.” § 921(a)(33)(A)(i). Given the paucity of state and federal statutes targeting domestic violence, we find it highly improbable that Congress meant to extend § 922(g)(9)’s firearm possession ban only to the relatively few domestic abusers prosecuted under laws rendering a domestic relationship an element of the offense. See Barnes, 295 F. 3d, at 1364 (rejecting the view that “Congress remedied one disparity — between felony and misdemeanor domestic violence convictions — while at the same time creating a new disparity among (and sometimes, within) states”).[9]
*428 The measure that became §§ 922(g)(9) and 921(a)(33)(A), Hayes acknowledges, initially may have had a broadly remedial purpose, see Brief for Respondent 28-29, but the text of the proposal, he maintains, was revised and narrowed while the measure remained in the congressional hopper. The compromise reflected in the text that gained passage, Hayes argues, restricted the legislation to offenses specifically de-' nominating a domestic relationship as a defining element. The changes Hayes identifies, however, do not corroborate his argument.
Congress did revise the language of § 921(a)(33)(A) to spell out the use-of-force requirement. The proposed legislation initially described the predicate domestic-violence offense as a “crime of violence . . . committed by” a person who had a domestic relationship with the victim. 142 Cong. Rec. 5840. The final version replaced the unelaborated phrase “crime of violence” with the phrase “has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon.” This apparently last-minute insertion may help to explain some of the syntactical awkwardness of the enacted language, but it does not evince an intention to convert the “committed by” phrase into a required element of the predicate offense.
Indeed, in a floor statement discussing the revised version of § 922(g)(9), Senator Frank Lautenberg, the sponsor of the provision, observed that a domestic relationship between aggressor and victim often would not be a designated element of the predicate offense:
“[C]onvictions for domestic violence-related crimes often are for crimes, such as assault, that are not explicitly identified as related to domestic violence. Therefore, it will not always be possible for law enforcement authorities to determine from the face of someone’s criminal record whether a particular misdemeanor con *429 viction involves domestic violence, as defined in the new law.” Id., at 26675.
The remarks of a single Senator are “not controlling,” Consumer Product Safety Common v. GTE Sylvania, Inc., 447 U. S. 102, 118 (1980), but, as Hayes recognizes, the legislative record is otherwise “absolutely silent.” See Tr. of Oral Arg. 32, 35. It contains no suggestion that Congress intended to confine § 922(g)(9) to abusers who had violated statutes rendering the domestic relationship between aggressor and victim an element of the offense.
IV
The rule of lenity, Hayes contends, provides an additional reason to construe §§ 922(g)(9) and 921(a)(33)(A) to apply only to predicate offenses that specify a domestic relationship as an element of the crime. “[T]he touchstone of the rule of lenity is statutory ambiguity.” Bifulco v. United States, 447 U. S. 381, 387 (1980) (internal quotation marks omitted). We apply the rule “only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.” United States v. Shabani, 513 U. S. 10, 17 (1994). Section 921(a)(33)(A)’s definition of “misdemeanor crime of domestic violence,” we acknowledge, is not a model of the careful drafter’s art. See Barnes, 295 F. 3d, at 1356. But neither is it “grievous[ly] ambigu[ous].” Huddleston v. United States, 415 U. S. 814, 831 (1974). The text, context, purpose, and what little there is of drafting history all point in the same direction: Congress defined “misdemeanor crime of domestic violence” to include an offense “committed by” a person who had a specified domestic relationship with the victim, whether or not the misdemeanor statute itself designates the domestic relationship as an element of the crime.
* * *
For the reasons stated, the judgment of the United States Court of Appeals for the Fourth Circuit is reversed, and the *430 case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 Justice Thomas joins all but Part III of this opinion.

 West Virginia's battery statute provides: “[A]ny person [who] unlawfully and intentionally makes physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally causes physical harm to another person, . . . shall be guilty of a misdemeanor.” W. Va. Code Ann. §61-2-9(e) (Lexis 2005).

 The indictment stated, in relevant part:
“Defendant RANDY EDWARD HAYES’ February 24, 1994 Battery conviction . . . constituted a misdemeanor crime of domestic violence because:
“a. Battery is a misdemeanor under State law in West Virginia;
“b. Battery has, as an element, the use and attempted use of physical force;
“c. Defendant RANDY EDWARD HAYES committed the offense of Battery against the victim:
“i. who was his current spouse; and
“ii. who was a person with whom he shared a child in common; and “iii. who was cohabitating with and had cohabitated with him as a spouse.” App. 2-3 (bold typeface deleted).

 See United States v. Heckenliable, 446 F. 3d 1048, 1049 (CA10 2006); United States v. Belless, 338 F. 3d 1063, 1067 (CA9 2003); White v. Department of Justice, 328 F. 3d 1361, 1364-1367 (CA Fed. 2003); United States v. Shelton, 325 F. 3d 553, 562 (CA5 2003); United States v. Kavoukian, 315 F. 3d 139, 142-144 (CA2 2002); United States v. Barnes, 295 F. 3d 1354, 1358-1361 (CADC 2002); United States v. Chavez, 204 F. 3d 1305, 1313-1314 (CA11 2000); United States v. Meade, 175 F. 3d 215, 218-221 (CA1 1999); United States v. Smith, 171 F. 3d 617, 619-621 (CA8 1999).

 Hayes observes, see Brief for Respondent 24-25, that Congress has used the singular “element” in defining a “crime of violence” to require both an action (the use of force) and its object (the person of another). See, e. g., 18 U. S. C. § 16(a) (defining “crime of violence” as “an offense *422 that has as an element the use, attempted use, or threatened use of physical force against the person or property of another”). Although one might conceive of an action and its object as separate elements, it is unsurprising that Congress would have chosen to denominate “the use of force against another” as a single, undifferentiated element. In contrast, the two requirements set out in § 921(a)(33)(A)(ii) — the use of force and the existence of a specified relationship between aggressor and victim — are not readily conceptualized as a single element.

 Invoking the Dictionary Act, Hayes contends that the singular “element” encompasses the plural “elements.” See Brief for Respondent 25. The Dictionary Act provides that, “unless the context indicates otherwise,” “words importing the singular include and apply to several persons, parties, or things.” 1 U. S. C. § 1. On the rare occasions when we have relied on this rule, doing so was “necessary to carry out the evident intent of the statute.” First Nat. Bank in St. Louis v. Missouri, 263 U. S. 640, 657 (1924). As we explain infra, at 426-429, Hayes’s reading of 18 U. S. C. § 921(a)(33)(A) does not accord with Congress’ aim in extending the gun possession ban.

 As the United States points out, the Court of Appeals “itself recognized the flexibility of the rule [of the last antecedent].” Brief for United States 20, n. 7. Under a strict application of the rule, the “committed by” phrase would modify only its immediate antecedent, i. e., “the threatened use of a deadly weapon,” and not the entire phrase “use or attempted use of physical force, or the threatened use of a deadly weapon.” The court rightly regarded such a reading as implausible. See 482 F. 3d 749, 755 (CA4 2007).

 We find it not at all “surprising” — indeed, it seems to us “most natural” — to read § 921(a)(33)(A) to convey that a person convicted of battering a spouse or other domestic victim has committed a “crime of domestic violence,” whether or not the statute of conviction happens to contain a domestic-relationship element. Cf. post, at 431.

 Additional States have enacted such statutes since 1996, but about one-half of the States still prosecute domestic violence exclusively under generally applicable criminal laws. See Brief for United States 23-24, and n. 9.

 Generally, as in this case, it would entail no “‘elaborate factfinding process,’ ” post, at 436, to determine whether the victim of a violent assault *428 was the perpetrator’s “current or former spouse” or bore one of the other domestic relationships specified in §.921(a)(33)(A)(ii) to the perpetrator.