HOOTEN, Judge
Following its ruling on defendants' motions to dismiss, the district court certified the question: are sister wholly owned subsidiaries of the same parent company one "person," such that a transfer of cannabis oil from one subsidiary to the other cannot *3 violate Minn. Stat. § 152.33, subd. 1 (2014). We answer this certified question in the negative.
FACTS
For purposes of this appeal, the parties stipulate to the following facts alleged in the complaint. Minnesota Medical Solutions LLC (MMS) is one of two companies in Minnesota that is allowed to manufacture and distribute medical marijuana. MMS is a wholly owned subsidiary of Vireo Health LLC (VH). VH also wholly owns another subsidiary, Vireo Health of New York LLC (VHNY), which produces and distributes medical marijuana in the state of New York.
At the time of the events alleged in the complaint, defendant Ronald Dale Owens was the Chief Security Officer for MMS. Defendant Laura Lynn Bultman, M.D., was the Chief Medical Officer of MMS.
In December of 2015, defendants discovered that VHNY could not produce a sufficient amount of medical marijuana to satisfy the requirements set by the state of New York. To supply this need in New York, defendants personally transferred 5.6 kilograms of concentrated cannabis oil, a derivative of marijuana containing its active ingredient, from MMS to VHNY in an armored truck. To effectuate this transfer, defendants falsified inventory records for both MMS and VHNY.
The state charged defendants with intentionally transferring medical cannabis to a person other than allowed by law, in violation of Minn. Stat. § 152.33, subd. 1. Defendants filed individual motions to dismiss, each arguing as a matter of law that they could not have violated the statute because the transfer of cannabis oil to VHNY was not a transfer to a different "person." The district court denied the motions but certified the underlying question that is common to both defendants.
ISSUE
Are two wholly owned sister subsidiaries of the same parent company legally one "person," such that a transfer of medical marijuana from one subsidiary to the other does not constitute a transfer of medical marijuana to another "person" in violation of Minn. Stat. § 152.33, subd. 1 ?
ANALYSIS
This is an issue of first impression. The district court certified the question, "Are [VHNY] and [MMS], sister companies sharing the same Chief Medical Officer and Chief Security Officer, and owned by the same parent, 'one person,' such that a transfer of cannabis oil between the two does not violate, as a matter of law, Minn. Stat. § 152.33, subd. 1 ?" Answering a certified question is a matter of law that we consider de novo. State v. Cox , 798 N.W.2d 517, 519 (Minn. 2011).
In relevant part, Minn. Stat. § 152.33, subd. 1, states:
In addition to any other applicable penalty in law, a manufacturer or an agent of a manufacturer who intentionally transfers medical cannabis to a person other than a patient, a registered designated caregiver or, if listed on the registry verification, a parent or legal guardian of a patient is guilty of a felony punishable by imprisonment for not more than two years or by payment of a fine of not more than $ 3,000, or both.
And, "person" in this context is defined as "every individual, copartnership, corporation or association of one or more individuals." Minn. Stat. § 152.01, subd. 13 (2014).
Defendants argue that Minn. Stat. § 152.33, subd. 1, does not apply to the transfer of medical marijuana from their facility in Minnesota that is owned by *4 MMS to the facility in New York that is owned by VHNY. Specifically, they argue that: (1) antitrust principles preclude application of the statute to the facts of this case; (2) we should reverse the district court based on the rule of lenity; (3) New York's decision not to prosecute defendants based on an interpretation of a similar New York statute should control our interpretation of Minn. Stat. § 152.33, subd. 1 ; and (4) the subsequent implementation of Minn. Stat. § 152.33, subd. 1a (2018), makes their prosecution under Minn. Stat. § 152.33, subd. 1, an ex post facto punishment.
Plain language
We begin our analysis by considering whether the relevant statutes are ambiguous. "The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous." Larson v. State , 790 N.W.2d 700, 703 (Minn. 2010) (quotation omitted). "A statute is ambiguous only when the statutory language is subject to more than one reasonable interpretation." State v. Fleck , 810 N.W.2d 303, 307 (Minn. 2012).
Applying the first step, we conclude that Minn. Stat. § 152.33, subd. 1, is not ambiguous. Minn. Stat. § 152.01, subd. 13 unambiguously includes limited liability companies in the definition of "person." And by using that definition, Minn. Stat. § 152.33, subd. 1, unambiguously prohibits the transfer of medical marijuana to an unauthorized limited liability company. No statutory language exempts the transfer of medical cannabis to a separate corporation with shared ownership. See Minn. Stat. § 152.33, subd. 1.
Defendants do not argue that the statutes are ambiguous. Instead, they argue that we should ignore the legal distinction between the three companies involved and should instead treat them as a single company because they are the same "person." But in the absence of ambiguity, we will apply the plain meaning of statutory language. State v. Overweg , 922 N.W.2d 179, 183 (Minn. 2019). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16 (2018).
The application of the plain language of the relevant statutes to the instant facts is clear. The statutes prohibit the transfer of medical marijuana from one company to another. Parent companies and wholly owned subsidiaries are separate companies that are distinct legal entities. See Milwaukee Motor Transp. Co. v. Comm'r of Taxation , 292 Minn. 66, 193 N.W.2d 605, 608 (1971) ("It is true that the [parent company] owns [the wholly owned subsidiary's] stock, but that fact does not alter the corporate character of either. It is well settled that a corporation possesses a legal existence separate from its stockholders."). Even if MMS had transferred the medical marijuana to its parent corporation-where the companies are only one step removed-that would still violate section 152.33. Thus, the transfer of medical marijuana from one sister subsidiary to another-where the companies are two steps removed-is a transfer to a separate "person" under the statute. There is no justification for us to consider the intent of the legislature or underlying legal principles because the application of the statute to the instant facts is clear.
Additionally, this is not a case in which the application of the plain language of the statute produces an absurd result such that we would be free to look beyond the plain language. See Anker v. Little , 541 N.W.2d 333, 337 (Minn. App. 1995) (holding that the court would not look beyond the unambiguous language of the statute *5 because "our judicial role requires us to exercise this authority sparingly and only when a party demonstrates the statute's plain language violates a clearly expressed goal of the legislature"), review denied (Minn. Feb. 9, 1996). The statutes involved prohibit the physical transfer of medical marijuana from one corporation to another, and defendants violated this prohibition. Given the heavily regulated nature of medical marijuana and the fact that it is still illegal under federal law, we cannot say that imposing criminal sanctions for impermissibly transferring medical marijuana from one subsidiary to another creates an absurd result.
We therefore hold that the term "person" in the context of Minn. Stat. § 152.33, subd. 1, is not ambiguous, and the statute may be applied to a transfer between wholly owned subsidiaries of the same parent corporation.
Antitrust principles
Defendants attempt to distort the issue in this case so as to apply antitrust principles to an unrelated statutory scheme. They frame the issue as, "could two related corporate entities be separate enough to reach an agreement to conspire with each other, or are they one in the same for criminal liability?" This issue statement represents a misapprehension of both the law and the facts of this case. As above, the relevant statutes are not focused on conspiracy or the intentions of the parties, but on the physical transfer of medical marijuana. See Minn. Stat. § 152.33, subd. 1.
Defendants' argument is based on antitrust principles about claims of "conspiracy in restraint of trade," and is heavily reliant on Copperweld Corp. v. Indep. Tube Corp. , 467 U.S. 752, 759 n.3, 104 S. Ct. 2731, 2735 n.3, 81 L.Ed.2d 628 (1984) (quoting 15 U.S.C. § 1 (1982), hereinafter "the Sherman Act"). Section 1 of the Sherman Act restricts "unreasonable restraints of trade effected by a contract, combination ... or conspiracy between separate entities." Id. at 768, 104 S. Ct. at 2740 (quotation omitted). "It does not reach conduct that is wholly unilateral." Id. (quotation omitted). On the other hand, section 2 liability does reach activity that is entirely unilateral. Id. "Concerted activity subject to § 1 is judged more sternly than unilateral activity under § 2." Id. This is because, "Certain agreements, such as horizontal price fixing and market allocation, are thought so inherently anticompetitive that each is illegal per se without inquiry into the harm it has actually caused." Id.
Copperweld held that the actions of a parent and its wholly owned subsidiary are not subject to section 1 of the Sherman Act because their coordinated actions do "not represent a sudden joining of two independent sources of economic power previously pursuing separate interests," which is the evil that section 1 seeks to prohibit. Id. at 770-71, 104 S. Ct. at 2741. In that context, the focus is on the act of agreement between entities that normally should have divergent interests. Id. at 771, 104 S. Ct. at 2741-42. It makes perfect sense that the Copperweld court would hold that there can be no conspiracy in this context because parent companies and wholly owned subsidiaries have the same interests and share the same goals. There can be no "sudden joining of two independent sources" because there is no independence. Id. at 771, 104 S. Ct. at 2741.
These principles are irrelevant to this case for three reasons. First, as mentioned above, Minn. Stat. § 152.33, subd. 1, is unambiguous and, as such, is not subject to interpretation beyond the plain language of the statute. Second, the lead case on this matter, Copperweld , explicitly limits its holding to section 1 of the Sherman *6 Act. 467 U.S. at 767, 104 S. Ct. at 2739 ("We limit our inquiry to the narrow issue squarely presented: whether a parent and its wholly owned subsidiary are capable of conspiring in violation of § 1 of the Sherman Act."). And third, Minn. Stat. § 152.33, subd. 1, is concerned with the transfer of medical marijuana. It prohibits the movement of tangible, physical property. Section 1 of the Sherman Act, on the other hand, addresses concerted activity between entities which, in the absence of illegal collusion, have separate and opposite interests. Copperweld , 467 U.S. at 770-71, 104 S. Ct. at 2741. The important distinction is that the interests of the parties involved are irrelevant to the application of Minn. Stat. § 152.33, subd. 1, while the interests of the parties involved in an antitrust action are of central importance.
Defendants also cite to an Eighth Circuit Court of Appeals case involving the application of this Copperweld doctrine to a RICO conspiracy case. Fogie v. THORN Americas, Inc. , 190 F.3d 889, 892 (8th Cir. 1999) (citing the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 - 1968 (1994) ). But as with the antitrust context, there was an issue at play in Fogie beyond a simple transfer of possession. See id. at 898 ("[W]e must consider whether a subsidiary may be sufficiently distinct from its parent or other related subsidiaries so as to satisfy § 1962(c)'s distinctiveness requirement.... [T]here must be a greater showing that the parent and subsidiary are distinct than the mere fact that they are separate legal entities. To conclude otherwise would be to read the distinctiveness requirement out of RICO."); see also 18 U.S.C. § 1962(d) (prohibiting conspiracy to violate 18 U.S.C. § 1962(a-c) ). In short, while defendants seek to analogize to Fogie , the case is simply inapposite. We therefore reject defendants' invitation to apply antitrust principles to this case.
Other arguments
Defendants also argue that this court should reverse the district court based on the rule of lenity. Defendants have failed to cite to caselaw that applies this rule. The first case defendants cite to in this section, State v. Mauer , addressed the constitutionality and interpretation of an ambiguous statute. 741 N.W.2d 107, 110-13 (Minn. 2007). The second case, State v. Olson , involved a claim that a statute unconstitutionally violated the separation of powers doctrine. 325 N.W.2d 13, 16 (Minn. 1982). Neither of these cases involve the rule of lenity, nor does either opinion even contain the word "lenity." Mauer , 741 N.W.2d at 107-116 ; Olson , 325 N.W.2d at 13-20. And further, the rule of lenity only applies after a statute has been found to be ambiguous-something that defendants do not even explicitly allege, much less argue. See State v. Thonesavanh , 904 N.W.2d 432, 440 (Minn. 2017) ("[T]he overwhelming weight of authority is that the rule of lenity is a canon of last resort, applicable 'only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.' " (quoting United States v. Hayes , 555 U.S. 415, 429, 129 S. Ct. 1079, 1089, 172 L.Ed.2d 816 (2009) )). We therefore hold that the rule of lenity does not apply here because defendants have failed to meet their threshold burden of establishing that Minn. Stat. § 152.33 is ambiguous.
Defendants also argue that their transfer of medical marijuana to New York state is not a crime there based on their reading of a New York statute that "can be read as a companion to ours." They argue that the Minnesota statute therefore "has a gap" because it does not "specifically prohibit ... the intra-transfer between commonly held sister corporations." But Minn. Stat. § 152.33, subd. 1, plainly prohibits *7 that activity, and the fact that New York has different laws and/or exercises its prosecutorial discretion differently is not relevant to our analysis. This argument also fails.
Finally, defendants raise a new argument in their reply brief about Minn. Stat. § 152.33, subd. 1a, which only became effective in May of 2017. They argue that because subdivision 1a specifically prohibits the interstate transfer of medical marijuana, convicting defendants under subdivision 1 for their actions in December 2015 is essentially an ex post facto application of subdivision 1a.
This argument fails for three reasons. First, defendants did not raise it in their initial brief and so it goes beyond the permissible scope of a reply brief. See Minn. R. Civ. App. P 128.02, subd. 4 ("The reply brief must be confined to new matter raised in the brief of the respondent."). Second, while subdivision 1a contemplates revocation of registration and a fine, it does not provide for criminal penalties and does not preclude the application of a criminal statute that arguably creates some overlap of prohibited behavior. See Minn. Stat. § 152.33, subd. 1a (allowing for penalties up to a $ 250,000 fine and the initiation of proceedings to revoke registration). And third, both subdivisions 1 and 1a begin by stating, "In addition to any other applicable penalty in law." Id. , subds. 1, 1a. Neither subdivision mandates that it is an exclusive sanction. We therefore hold that defendants' argument fails.
DECISION
We hold that sister wholly owned subsidiaries of the same parent corporation are separate "persons" under the plain language of Minn. Stat. § 152.33, subd. 1. And defendants' other arguments do not provide a basis for us to look beyond the plain language of the statute.
Certified question answered in the negative.