[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11848
_____

D.C. Docket No. 6:16-cr-00140-PGB-KRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN BROWN,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 21, 2020)

Before JILL PRYOR, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Kevin Brown was found guilty of possessing a firearm after being convicted

of a "misdemeanor crime of domestic violence." *See* 18 U.S.C. § 922(g)(9).  His

relevant prior conviction was a 2004 conviction in Florida for simple battery. *See* Fla. Stat. § 784.03(1). His conviction in this case came after a bench trial where the stipulated facts included that, before possessing a firearm, "Mr. Brown had been convicted . . . of committing a battery, in violation of Florida Statute § 784.03(1), against Sherry Lynette Brown, who Mr. Brown cohabitated with and is similarly situated to a spouse" and that "[a]lthough Mr. Brown was convicted of battery . . . the Information and Judgment title the charge as 'domestic battery.'"

Brown now appeals, raising three arguments. He first argues that 18 U.S.C. § 922(g)(9) is unconstitutional for him because his underlying conviction could have been (not was) nonviolent. He also argues that he could not have knowingly and intelligently waived his right to a jury trial in relation to his original battery charge (for which he pleaded no contest) because no one told him at the time that one of the consequences of that plea was that he could not possess a firearm. Brown says his battery conviction should therefore not count as a predicate offense for purposes of § 922(g)(9). Finally, he claims that his § 922(g)(9) conviction must be reversed because the evidence at trial was insufficient to show that he knew he had the relevant status when he possessed a firearm—a requirement the Supreme Court made clear in *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019). We affirm his conviction.

2

I.

This case arose after Brown sold drugs and a .380 caliber pistol to a confidential informant. Following that sale, a grand jury returned a one-count indictment against Brown for possession of a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). Brown's predicate misdemeanor crime of domestic violence was a 2004 conviction for Florida simple battery, to which he had pleaded no contest. That battery conviction involved an incident between Brown and his domestic partner, Sherry Brown. The two lived together at that time and were apparently "similarly situated to" spouses. After Brown threatened Sherry—who was pregnant—while holding a knife, he was originally charged with felony aggravated assault with a deadly weapon. Eventually his offense was downgraded to simple battery, with the information, judgment, and sentence in the case identifying the crime as "domestic battery." *See* Fla. Stat. § 784.03(1).

Brown moved to dismiss the § 922(g)(9) indictment for two reasons. His first contention was that the Second Amendment barred his conviction. His second was that he was not adequately informed of the collateral consequence of his plea in his battery case, meaning that his plea could not be considered knowing and intelligent. The district court denied his motion to dismiss. The parties then

3

proceeded to a stipulated bench trial, in which Brown preserved each of the arguments from his motion to dismiss but otherwise stipulated that the facts were sufficient to find him guilty of the charged offense beyond a reasonable doubt. The district court found Brown guilty.

A few weeks after the district court's ruling against Brown, he received permission to enter a renewed motion for judgment of acquittal. His renewed motion made the new argument that the government was required to prove that he knew that he had been convicted of a domestic violence misdemeanor when he possessed a firearm. The district court denied the motion and held that Brown's new argument was judicially estopped because it contradicted his prior stipulation that the facts were sufficient to find him guilty of the charged offense beyond a reasonable doubt. The court proceeded to sentencing, where it found that Brown's Sentencing Guidelines range was 18 to 24 months of imprisonment, before varying downward and sentencing Brown to two years of probation.

On appeal, Brown repeats his original arguments that § 922(g)(9) violates the Second Amendment as applied and that he was not adequately informed of the collateral consequence of his plea in his battery case such that the plea could not be considered knowing and intelligent. He also makes the knowledge argument from his renewed motion for judgment of acquittal—this time with the benefit of *Rehaif v. United States*, which held that to obtain a conviction under § 922 the

4

government must show both that a "defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194.

## II.

We review the denial of a motion for judgment of acquittal de novo. *United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015). We likewise review constitutional claims, questions of statutory interpretation, the sufficiency of the evidence, and the adequacy of a jury trial waiver de novo. *United States v. Rozier*, 598 F.3d 768, 770 (11th Cir. 2010) (constitutional claims); *United States v. Segarra*, 582 F.3d 1269, 1271 (11th Cir. 2009) (statutory interpretation); *United States v. Brown*, 415 F.3d 1257, 1270 (11th Cir. 2005) (sufficiency of the evidence); *United States v. Farris*, 77 F.3d 391, 396 (11th Cir. 1996) (adequacy of a jury trial waiver). We "review the district court's application of judicial estoppel for abuse of discretion." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (citing *Talavera v. School Bd. of Palm Beach County*, 129 F.3d 1214, 1216 (11th Cir. 1997)).

## III.

We first consider each of Brown's original arguments to the district court. We then turn to the newer argument about his knowledge of his status as a domestic violence misdemeanant.

5

A.

Brown's first argument targets his conviction under 18 U.S.C. § 922(g)(9), which he says is unconstitutional, at least for him; he recognizes that this Court already upheld that statute in a post-*Heller* case ten years ago.  *See United States v. White*, 593 F.3d 1199, 1205–06 (11th Cir. 2010); *see also GeorgiaCarry, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1323 (11th Cir. 2015) (noting that this Court "upheld against Second Amendment challenge the federal prohibition on the possession of firearms by persons convicted of the misdemeanor crime of domestic violence, 18 U.S.C. § 922(g)(9)").  His argument goes something like this: *White* addressed the application of § 922(g)(9) to those convicted of domestic violence.  But *my* conviction was not for *violent* domestic violence: first, because *United States v. Castleman* said that true violence is not required for domestic violence convictions to qualify as predicate convictions under § 922(g)(9), and second, because the statute that I was convicted under allows a conviction for merely "intentionally touch[ing]" a victim.  *See Castleman*, 572 U.S. 157, 163–65 (2014); Fla. Stat. § 784.03 (simple battery).  Therefore, he says, I cannot be constitutionally restricted from possessing a firearm.

Brown's argument is not enough to remove him from the reach of our prior holding in *White*.  To the extent *Castleman* is relevant, it supports Brown's conviction rather than bringing it into question.  *Castleman* did not suggest that

6

those convicted of domestic violence are not dangerous.  What *Castleman* did hold

is that the phrase "misdemeanor crime of domestic violence" in § 922(g)(9)

includes battery statutes that are "satisfied by even the slightest offensive

touching."  *See Castleman*, 572 U.S. at 162–68.  That includes Florida simple

battery, the predicate for Brown's conviction.  Fla. Stat. § 784.03(1).  And,

importantly, the Alabama statute that was the predicate for the § 922(g)(9)

conviction in *White* likewise allowed a conviction for someone who "otherwise

touches" a domestic victim—there, with the "intent to harass, annoy, or alarm."

Ala. Code §§ 13A-11-8, 13A-6-132.  So the legal backdrop emphasized here is

nothing new; our decision in *White* upheld § 922(g)(9) with the understanding

already in place that it applied to that type of offense.

Because Brown's challenge here is no different than the one we already

decided in *White*, our conclusion cannot be different either.  *See United States v.*

*Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("[A] prior panel's holding is

binding on all subsequent panels unless and until it is overruled or undermined to

the point of abrogation by the Supreme Court or by this court sitting *en banc*."); *cf.*

*United States v. Carter*, 752 F.3d 8, 13 (1st Cir. 2014) (explaining that *Castleman*

did not alter the First Circuit's previous holding "with respect to the

constitutionality of § 922(g)(9)").  We thus reject it.

B.

We next address Brown's argument that he did not make a knowing and intelligent waiver of trial by jury because he was unaware of one of the collateral consequences of his no contest plea—that he would be prohibited from possessing firearms.  Under 18 U.S.C. § 921(a)(33)(B)(i), a person is not "considered to have been convicted" of a relevant prior offense where the defendant was entitled to a jury trial on the charge unless either "the case was tried by a jury," or "the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise."

We reject Brown's challenge.  He acknowledges that he "was told he had the right to a jury trial and that he waived that right."  Nothing he argues makes us doubt that his waiver was knowing and intelligent.  He does not contend, for example, that he failed to appreciate that, as a result of his waiver, his case would not be put before a jury of his peers.  Nor does he claim that he was intoxicated or otherwise incompetent at the time he waived his right to trial by jury.  Instead, he focuses on the fact that he was not aware that a conviction would carry the collateral consequence of prohibiting firearm possession.  But that consequence flowed from his decision to plead no contest, not from his decision to waive a trial *by jury*. *See* 18 U.S.C. § 921(a)(33)(B)(i)(II) (specifying that the section applies to offenses "for which a person was entitled to a jury trial").  Nothing about the

8

record, then, serves to undermine Brown's understanding that the case would not be put to a jury or the consequences of declining to have a jury hear the case (as opposed to the consequences of being convicted). And as a textual matter, that is the relevant inquiry.

We have recognized that a "court need not explain the possible collateral consequences of a guilty plea." *Holmes v. United States*, 876 F.2d 1545, 1548 (11th Cir. 1989). And "the prohibition against firearm possession is a collateral consequence of conviction." *United States v. Chavez*, 204 F.3d 1305, 1314 (11th Cir. 2000).

Brown nonetheless argues that we should look to the standards that govern the Sixth Amendment right to counsel, where we have recognized that the defendant's knowledge of the ultimate risk of punishment is relevant to his ability to make a knowing waiver of counsel, citing decisions that post-date *Holmes* and *Chavez*. *See United States v. Kimball*, 291 F.3d 726, 732 (11th Cir. 2002) ("The purpose of a *Faretta* inquiry is to ensure that a defendant understands the risks of defending himself; this purpose is satisfied when a defendant is aware of the maximum penalty he faces."); *cf. Padilla v. Kentucky*, 559 U.S. 356, 364, 369 (2010) (holding that an attorney failed to provide effective assistance of counsel by failing to advise a non-citizen client that a guilty plea carried a risk of deportation). Neither case rejects the reasoning of *Holmes* or *Chavez*. *See Archer*, 531 F.3d at

9

1352 ("Under [our prior panel precedent] rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.").

We conclude that Brown's lack of knowledge of the particular collateral consequence of being unable to possess a firearm does not defeat his knowing and intelligent waiver of his right to jury trial. *See United States v. Bethurum*, 343 F.3d 712, 718 (5th Cir. 2003) (holding that the defendant's waivers in the case leading to his predicate conviction "were not rendered unknowing or involuntary by the absence of a warning" regarding the "collateral matter" of his "ability to possess a firearm").

## C.

We finally review Brown's argument that the government failed to establish that he knew he possessed the status of a convicted domestic violence misdemeanant. When Brown made this argument after the district court had already found him guilty, the district court stated that he was "judicially estopped" from making it. The court explained that Brown was prohibited from arguing that insufficient evidence supported his conviction when he had stipulated before trial that sufficient evidence of guilt existed. However, to invoke judicial estoppel against a party, the party must ordinarily have an intent "to make a mockery of the judicial system." *Baloco v. Drummond Co.*, 767 F.3d 1229, 1245 (11th Cir. 2014)

10

(citation omitted).  And the district court, in its order denying the renewed motion for judgment of acquittal, noted that "defense counsel enjoy reputations for consistent candor to the tribunal" and that the "Court assumes the defense failed to appreciate the inconsistency in their position at trial."  The government suggests that although the district court used the words "judicially estopped," its reasoning relied on the binding nature of the stipulation, rather than the equitable doctrine of judicial estoppel.  Mindful that we may affirm on any ground present in the record, we proceed on the theory that Brown's stipulation contained sufficient evidence of his knowledge.  *See United States v. Chitwood*, 676 F.3d 971, 975–76 (11th Cir. 2012).

Brown urges us to look to *Rehaif v. United States* and its holding that the government must show "that he knew he had the relevant status" when he possessed the gun.  139 S. Ct. at 2194.  In this case, the relevant status is that of domestic violence misdemeanant.  After closely considering *Rehaif*, we conclude that the binding stipulation contained sufficient evidence to uphold the conviction because it demonstrates Brown's knowledge of his status.

To see why, it helps to compare this case to hypotheticals put forward in *Rehaif* itself.  For example, the majority in *Rehaif* indicated that a convicted felon might nevertheless lack knowledge of his relevant status if he was "convicted of a prior crime but sentenced only to probation" and there was no evidence he knew

11

that the crime was "punishable by imprisonment for a term exceeding one year." *Id.* at 2198 (emphasis omitted). In that case, the absence of an ordinary feature of felonies—that they are punishable by more than a year in prison—might weaken the inference that a defendant knew his crime was a felony.

By contrast, the stipulation here shows that Brown knew that all of the defining features of misdemeanor crimes of domestic violence were present in his case. Section 921(a)(33)(A) "defines 'misdemeanor crime of domestic violence' as a misdemeanor offense that (1) 'has, as an element, the use [of force],' and (2) is committed by a person who has a specified domestic relationship with the victim." *United States v. Hayes*, 555 U.S. 415, 426 (2009) (alteration in original). Furthermore, while the domestic relationship "must be established," it "need not be denominated an element of the predicate offense." *Id.*

Here, the stipulation that Brown entered into stated that he "commit[ed] a battery"—showing his knowledge that his predicate offense involved the use of force—and that the battery was "against Sherry Lynette Brown, who Mr. Brown cohabitated with and is similarly situated to a spouse"—showing knowledge of the specified domestic relationship. The information in the stipulation, then, is a far cry from *Rehaif*'s hypothetical where the unusually short length of a sentence left a felon unaware of his status; instead, the stipulation shows a textbook misdemeanor crime of domestic violence. To emphasize the point, the stipulation also clarifies

12

that "Although Mr. Brown was convicted of battery under § 784.03(1), the Information and Judgment title the charge as 'domestic battery.'"  And Brown clearly stipulated that these same facts were "sufficient to allow" the district court "to find beyond a reasonable doubt that Mr. Brown committed the offense charged in the indictment."

Also admitted at trial was a composite exhibit containing Brown's information, plea agreement, and judgment.  The information designates Brown's charge as a "1 DEG MISD," a clear reference to the charge's misdemeanor status. The judgment reflected that Brown should direct payment of costs and fines to the "Misdemeanor Division" of the State's Attorney's Office.  Although "the label a state attaches to an offense is not conclusive of whether a prior conviction qualifies" as a particular type of offense for purposes of federal law, *United States v. Palomino Garcia*, 606 F.3d 1317, 1330–31 (11th Cir. 2010), the documents contained in the exhibit, which pertained specifically to Brown, are relevant to his knowledge about the crime for which he was convicted.

The majority in *Rehaif* explicitly stated that it doubted the obligation to show knowledge would be particularly burdensome, citing to caselaw holding that knowledge may be shown through circumstantial evidence.  139 S. Ct. at 2198. Viewed as a whole, the direct and circumstantial evidence of Brown's knowledge

13

of his status as a domestic violence misdemeanant contained in the stipulation is overwhelming.  His conviction stands.

*    *    *

Under binding circuit precedent, applying § 922(g)(9) to Brown does not violate the Second Amendment.  He raises no other reversible errors.  We therefore affirm his conviction.

**AFFIRMED.**