NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0512n.06

Case No. 21-1131

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

GUN OWNERS OF AMERICA, INC.;  )
DONALD J. ROBERTS, II,  )
  )
    Plaintiffs-Appellants,  )
  )
v.  )
  )
UNITED STATES DEPARTMENT OF  )
JUSTICE; BUREAU OF ALCOHOL,  )
TOBACCO, FIREARMS AND  )
EXPLOSIVES; REGINA LOMBARDO,  )
  )
    Defendants-Appellees.  )
  )

FILED
Nov 09, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: SUTTON, Chief Judge; BATCHELDER and LARSEN, Circuit Judges.

PER CURIAM. Donald Roberts went to the store to buy a shotgun. At the cash register, he presented his state-issued permit to carry a gun. The store's employee refused to complete the sale, telling Roberts that he would need to complete a federal background check. Federal law once exempted Michigan permit holders like Roberts from these background checks, but the relevant federal agency recently changed its position on the issue. Caught between governments and deterred by the new background-check obstacle, Roberts, together with Gun Owners of America, sued the federal government. They claim that the agency's new position violates federal law. The district court ruled for the government. We vacate and remand for further proceedings.

I.

In 1993, Congress enacted the Brady Handgun Violence Prevention Act to "prevent convicted felons and other persons who are barred by law from purchasing guns." H.R. Rep. No. 103-344, at 7 (1993); *see* Pub. L. No. 103-159, 107 Stat. 1536. To accomplish this objective, the Attorney General established the National Instant Criminal Background Check System (NICS), 28 C.F.R. § 25.1 *et seq.*, which gun sellers and others must use to determine "whether receipt of a firearm by a prospective transferee would violate" the law, 34 U.S.C. § 40901(b); *see* 18 U.S.C. § 922(t)(1). If the background check reveals that a transfer would be illegal—say, because the applicant is a felon, was dishonorably discharged from the military, is subject to certain restraining orders, or currently suffers from a serious mental disability—the dealer may not proceed. *See* 18 U.S.C. § 922(t)(1); *see also id.* § 922(g).

A "principal exception" to the background-check requirement exists for qualifying state-issued permits. *Abramski v. United States*, 573 U.S. 169, 172 n.1 (2014); *see* 18 U.S.C. § 922(t)(3)(A). A state permit satisfies the exception if state law creates a background-check process that covers the federal bases for denying the sale of a gun to an individual. 18 U.S.C. § 922(t)(3)(A). Some States have opted for this path while others have not. A federal agency—the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, usually called the ATF—issues notices to federally licensed sellers that identify the eligible States. *See* ATF, *Permanent Brady Permit Chart*, https://go.usa.gov/xHWkd (last updated June 21, 2020); *see also* 28 C.F.R. § 0.130(a).

That brings us to Michigan and its concealed-pistol license. In the years immediately after Congress passed the Brady Act, the ATF took the position that the Michigan permit did not satisfy the exception. But in 2005, the Michigan legislature sought to bring its law in line with the Brady

Act exception. Enacted that year, the Michigan statute now requires "[t]he department of state police, or the county sheriff" to "determine[] through the federal national instant criminal background check system that the applicant [for the permit] is not prohibited under federal law from possessing or transporting a firearm." Mich. Comp. Laws § 28.426(2)(a). Soon after, the ATF agreed that Michigan's concealed-pistol license qualified for the background-check exception. At the same time, the ATF also recognized the validity of Michigan's other firearm-permitting scheme, the "License to Purchase," Mich. Comp. Laws § 28.422, and treated it as eligible for the Brady Act exception. That regime follows the same state law as the one used for Michigan's concealed-pistol license. *See* Mich. Comp. Laws § 28.426(1)(a).

Michigan's gun-licensing statute has not changed in any material way since then. In 2017, however, the ATF took the view that some Michigan officials were not being sufficiently vigilant in confirming whether federal law permits gun ownership for certain types of offenses. The Michigan State Police, one of the agencies responsible for implementing one of the state permitting processes, informed the ATF that it was required only to "access[]" the information in the NICS databases, but was not required to conduct further "research" as to whether applicants for concealed-pistol licenses were federally prohibited. R.16-1 at 57, 104. Extra research became an issue with respect to federal prohibitions that lacked an identical state-law "equivalent," such as the federal prohibition on possessing a gun after a misdemeanor conviction for domestic violence, 18 U.S.C. § 922(g)(9). *See* R.16-1 at 57, 104. Federal law says that any federal, state, or tribal conviction that fits the federal definition of a "misdemeanor crime of domestic violence," 18 U.S.C. § 921(a)(33)(A), precludes the individual from buying a gun, *see* 18 U.S.C. § 922(g)(9). State law says that a differently defined Michigan domestic-violence offense, Mich. Comp. Laws

3

§ 750.81, precludes the individual from obtaining a concealed-pistol license. *See id.* § 28.425b(7)(h)(ix).

Michigan initially agreed to work with the ATF's concerns. The Michigan State Police informed the federal government the next year that it had "received an informal opinion" from the Michigan Attorney General "recommending that the [Michigan State Police] make and enter determinations of federal firearms prohibitions," including for misdemeanor crimes of domestic violence. R.16-1 at 17.

What started as inroads eventually became crossroads. When a new Attorney General took office in 2019, the practice of the Michigan State Police shifted. Michigan State Police officials informed the ATF that they would not conduct further research and make final determinations as to whether federal law prevented gun possession by some permit applicants who committed certain difficult-to-match misdemeanor domestic-violence offenses. The Michigan State Police informed the ATF that it was following guidance from its "legal counsel," who apparently had spoken with the Michigan Attorney General's Office. *Id.* at 26. In response, the ATF identified "at least 50" concealed-pistol licenses that "had been approved for issuance to applicants who," according to the government, "appeared to be federally prohibited due to a conviction for a misdemeanor crime of domestic violence." *Id.* at 58. The ATF and the State could not work out their disagreement.

In March 2020, the ATF issued a public-safety advisory to gun sellers, informing them that the Michigan concealed-pistol licenses no longer qualified under § 922(t)(3) as a valid alternative to a federal background check. The ATF also notified the Michigan Attorney General of its decision and the "corrective measures" needed for the permit to qualify as a Brady alternative. *Id.* at 103–05. Notwithstanding this decision, the ATF continues to recognize Michigan's other firearm-permitting scheme, the "License to Purchase," Mich. Comp. Laws § 28.422, as eligible

for the Brady Act exception. This other license is implemented by local police departments as opposed to the Michigan State Police, and the local police implement the same state law. Mich. Comp. Laws § 28.426.

That brings us to this case. After his unsuccessful trip to the gun store, Roberts and Gun Owners (collectively "Roberts" from now on) sued the ATF, an ATF official, and the U.S. Department of Justice, claiming that the agency's actions were unlawful under the Administrative Procedure Act. *See* 5 U.S.C. § 551 *et seq.* The district court rejected Roberts' claims and granted summary judgment in favor of the government on the merits.

## II.

The APA authorizes reviewing courts to set aside agency rules if the rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Roberts claims that the ATF's public-service advisory does not satisfy the APA.

Here is the relevant provision of the Brady Act in full:

[The background-check requirement] shall not apply to a firearm transfer between a [federally licensed seller] and another person if—
  (A)
        (i) such other person has presented to the [seller] a permit that—
            (I) allows such other person to possess or acquire a firearm; and
            (II) was issued not more than 5 years earlier by the State in which the transfer is to take place; and
        (ii) *the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law*.

18 U.S.C. § 922(t)(3)(A) (emphasis added).

At one level, this case looks straightforward. The Brady Act says that, before issuing a permit, a state official must "verif[y] that the information available to such official does not indicate that possession of a firearm" violates federal law. *Id.* § 922(t)(3)(A)(ii). All agree that

"the information available" to the state officials at a minimum includes the NICS federal database. *See* 27 C.F.R. § 478.102(d)(1)(iii). The Michigan statute then says that state officials "shall not issue" a permit unless they have gone "through [NICS]" and "determined" "that the applicant is not prohibited under federal law from possessing" a gun. Mich. Comp. Laws § 28.426(2)(a). The Michigan law seems to do what the federal law requires when it comes to Michigan's concealed-pistol license.

History suggests a similar conclusion. The ATF approved the Michigan permitting system in 2006, and the relevant terms of the Michigan law have not changed since then. Also unchanged is the ATF's continued approval of Michigan's other gun-permitting system. The ATF still maintains that Michigan's "License to Purchase" qualifies for the Brady Act exception. State law provides the same operative process for both permits. Both require that an official "has determined through the federal national instant criminal background check system that the applicant is not prohibited under federal law from possessing or transporting a firearm." *Id.* § 28.426(1)(a) (License to Purchase); *id.* § 28.426(2)(a) (concealed-pistol license).

But what looks straightforward is not. The relevant laws leave some essential questions unanswered, a few of which we can answer today, the rest of which require additional information on remand.

The first problem is brought to the fore by Roberts' interpretation of the Brady Act. He argues that "the law of the State" permits the ATF (and us) to inquire only whether a state statute honors the relevant language of the federal law. 18 U.S.C. § 922(t)(3)(A)(ii). That is a bridge too far. No doubt, a complying state statute is a necessary prerequisite for eligibility and usually will suffice by itself. But that may not always be the case. What looks to be true under a state statute may not be true. There could, for example, be a state-court decision that dilutes the apparent

meaning of the statute or perhaps an opinion by the Michigan Attorney General that casts light on the statute. A State, in short, could not pass a seemingly compliant state statute, then ignore it for all time.

The ATF's position in this case has a problem of its own. It complains not just about the possibility of a recalcitrant State; it complains about state officials who do not work sufficiently hard to "verify" whether a federal prohibition exists. Illustrating the ATF's far-reaching position is its stance on what state officials must do to ferret out state-law misdemeanor convictions that may implicate federal prohibitions. Recall that federal law prohibits gun possession by individuals who have state-law "misdemeanor crime of domestic violence" convictions. 18 U.S.C. § 922(g)(9). Section 921(a)(33)(A) defines the phrase in this way. It (1) must have "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon"; and (2) must be "committed by" a person with a listed domestic relationship with the victim: a current or former spouse, parent, guardian, coparent, or a person "similarly situated to a spouse, parent or guardian" whether as a cohabitant or not. *See United States v. Hayes*, 555 U.S. 415, 421 (2009). This inquiry creates difficult matching problems. The relevant Michigan domestic-violence misdemeanor covers offenses committed against a spouse, a former spouse, a coparent, or someone in a current or former "dating relationship" with the perpetrator, as well as a resident or former resident of the perpetrator's household. Mich. Comp. Laws § 750.81. Many of the other 49 state laws in this area likely create similar matching problems. In response, the Michigan State Police expressed discomfort to the ATF about looking beyond NICS when the database does not indicate that the federal bar on buying a handgun applies to an applicant. These practices, the ATF alleges, show a "changed [] interpretation" of the background-check process that would no longer satisfy the Brady Act exception. Appellee Br. at 23.

7

The problem is not just interpretation of state law, however; it is figuring out the meaning and reach of the federal statute. One read on the ATF's position is that nothing short of the investigation by the Michigan State Police of *all* facts that might bear on the mismatch problems between the definition of certain state-law misdemeanors and the nature of the federal ban on possessing a weapon—including for misdemeanors in all 50 States—would suffice. And that would be true no matter what is reasonably available from the NICS system or other accessible sources. But that is not what the Brady Act says. It requires only that the State "verif[y] that the information available" "does not indicate" federally prohibited status. 18 U.S.C. § 922(t)(3)(A)(ii). We cannot take one phrase ("verify that the information available") and give it a different, and far more burdensome, meaning ("verify that the circumstances of the underlying offense do not violate federal law"). No such directive appears in the statute.

Nor, contrary to the ATF's argument, does the mere presence of erroneous permit grants in the past establish authority by itself to remove a State from the eligibility list. The Brady Act contains proof that a real-time, perfect match between state-law convictions and federal-law prohibitions was never part of the design. A qualifying permit satisfies this exception so long as the State issued it "not more than 5 years earlier." 18 U.S.C. § 922(t)(3)(A)(i)(II). A lot can happen in five years, including more criminal convictions, and the States have no obligation to update the permitting system for a licensee during each five-year period. (Michigan law does require county clerks to revoke licenses upon an eligibility change. *See* Mich. Comp. Laws § 28.428.) The federal government appears to acknowledge that the Brady Act tolerates this shortcoming. When the U.S. Justice Department proposed a regulation in 1998 conditioning the Brady Act exception on "an appropriate permit revocation mechanism under State law," the ATF's chief counsel recognized that the proposed condition "is not found in the law." R.16-2 at 64.

This recognition reflected the reality that "[t]here is no question that the [Brady alternative regime] may result in the purchase of firearms by individuals with Federal firearms disabilities." *Id.* at 70. Qualifying States under the Act must establish a reliable proxy, not a perfect analog. We do not, in short, read the statute as broadly as the ATF asks us to read it.

All of this leaves us unwilling to accept the two above-the-fold arguments of the parties. On one side, we reject Roberts' argument that "the law of the State" precludes any inquiry into non-statutory evidence of state law and thus reject that ground for declaring the ATF advisory as inconsistent with the APA. On the other side, the ATF's position is wanting in ways of its own and precludes an affirmance of the decision below. The ATF has not shown a state-court decision that contradicts or undermines the state statute. It has not obtained an opinion of the Michigan Attorney General to like effect. All it has are ostensible statements by unidentified individuals in the Michigan State Police who spoke to unidentified people in the Michigan Attorney General's office—along with an unexamined audit that by itself does not show how state law works and that does not by itself show what the Brady Act requires. We also reject the position that there is no limit—not even a reasonableness limitation—to a state official's duty to root out matches between federal prohibitions and state laws that do not appear on the face of the conviction.

That leaves several follow-up questions and the possibility that this case itself could benefit from more "available" "information." As a "court of review, not of first view," *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005), we remand the case to allow both sides to account for what we have said so far in pressing their respective legal arguments and, if appropriate, to supplement the record. The requirements of state law, to start, remain unclear. As for the requirements of federal law, there are gaps as well, some legal, some administrative. The record would benefit from more detail about what the NICS database reveals when it comes, for example,

to identifying disqualifying domestic-violence misdemeanor convictions and what kinds of resources are needed to go beyond that information to identify potential matches.  At the same time, it is not clear from the ATF advisory—or the kind of process involved in issuing that advisory—what the agency's legal position is when it comes to the Brady Act's obligation on state officials.  Through it all, the parties may wish to consider whether this is a dispute that lends itself to negotiation and mediation, including the possibility of a negotiation that includes the Michigan Attorney General and the Michigan State Police.

We vacate the district court's decision and remand for further proceedings.